## Pflanz v. Foster.

(Decided October 1, 1913).

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Elections—Authority of Courts to Pass Upon Validity of Elections Wholly Statutory.—There is no inherent power in the courts to pass upon the validity of elections or to try contested election cases; their authority in such cases is wholly statutory and must be given expressly or by necessary implication.

2. Elections—Primary Act Does Not Empower Courts to Adjudge Election Void.—There being no express or implied authority in the Primary Act of 1912 empowering the courts to adjudge an election void, and that being the only relief which appellant is now seeking, it must be denied him.

3. Elections—Courts not Empowered Under Primary Act to Declare Election Void.—To read into the Primary Act the provisions of Sec. 1596a. Kentucky Statutes which authorizes the courts to declare general elections void under certain circumstances, would not only be doing violence to the language of the Primary Act, but would place the power of naming a nominee in the party committee, one of the abuses the Primary Act was intended to correct.

4. Elections—Primary Act Only Gives Courts Power to Declare Who Entitled to Nomination.—Section 28 of the Primary Act plainly gives to the courts in contested election cases only the power to declare either the contestant or the contestee entitled to the nomination; its very language excludes the idea of any additional power.

5. Elections—Primary Election Contest—Construction.—Section 36 of the Primary Act in its reference to the statute governing regular elections, by its very terms refers only to those statutes having to do with the conduct of elections, and there is nothing in it which can be deemed to have the remotest reference to a contested election or the power of the courts in such cases.

6. Elections—Matters Pertaining to Belong to Political Branch of Government.—Matters pertaining to elections properly belong to the political branch of the Government, and it is the policy of the courts in this State to assume no power in such cases not clearly given.

BURWELL K. MARSHALL for appellant.

W. W. CRAWFORD and EDWARD P. HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an election contest by appellant against appellee; they were each candidates for the Democratic nomination for jailer at the primary election held on August 2, 1913, in Jefferson County.

The Election Commissioners on the face of the returns awarded the certificate of nomination to appellee; appellant thereupon gave notice of contest alleging various kinds of fraud and numerous irregularities in specific precincts, and asserting that he, and not appellee was the rightful nominee, and had received the majority of the legal votes; he demanded a recount of the ballots in about two hundred precincts. In addition to claiming to be the rightful nominee, he contests the right of appellee to the nomination, and in his prayer asks that he (appellant) be adjudged the lawful nominee, and prays in the alternative that if this cannot be done the court adjudge the primary null and void because of the frauds and irregularities alleged.

After the recount of the ballots as requested by appellant, and after hearing numerous witnesses upon the allegations of fraud and irregularity, the lower court adjudged appellee to be the rightful nominee by a majority of 627.

Upon the trial in the lower court, in the oral argument in this court, and in his brief filed here, it was conceded by appellant's counsel that he had not shown himself entitled to this nomination; but it was insisted that fraud and irregularities had been shown to such an extent as to authorize the court to adjudge there had been no election.

Subsection 12 of section 1596a of Kentucky Statutes dealing with contested election cases under the general law and in general elections, among other things, provides:

"In case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery, or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal, or the Court of Appeals finally, may adjudge that there has been no election. In such event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify."

Section 28 of the Primary Act of March, 1912, under which this contest was instituted, is in full as follows:

"Any candidate wishing to contest the nomination of any other candidate who was voted for at any primary election held under this act shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, within five days from the time the Election Commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested. Said notice shall be served in the same manner as a summons from the circuit court, and shall warn the contestee of the time and place, when and where the contestee shall be required to answer and defend such contest, which shall not be less than three, nor more than ten days after the service thereof. Such contest shall be tried by the judge of the circuit court of the county in which the contestee resides or is served. Upon return of said notice properly executed as herein provided, to the office of the circuit clerk of the county in which said contestee resides or is served with such notice of contest, it shall be the duty of the clerk of the circuit court to immediately docket said cause and to immediately notify the presiding judge of the circuit court of said county that such contest had been instituted. Provided, That in counties constituting separate circuit court districts and having more than one circuit judge, the judge who shall hear and determine such cause shall be determined by lot. On or before the time for the return of said notice of said contest, the contestee may controvert the grounds of contest and may also set up additional grounds of contest against the contestant. If additional grounds of contest are set up by the response of the contestee the court may allow the contestant reasonable time, not to exceed three days, however, in which to reply; but no additional grounds of contest shall be set up in any reply, and the cause shall be tried upon the grounds of contest contained in the original notice by the contestant and the response of the contestee. Each party to such contest shall be entitled in the production of evidence to be used on the trial thereof to all the remedies allowed in cases at law and in equity, and the judge shall proceed to a trial of said cause within five days after issue is joined as herein provided. In trying such contests the court shall hear and determine all questions of law and fact without the intervention of a jury and may examine the witnesses orally or require the parties to take the evidence by depositions, in

the discretion of the court, or as may be agreed by the parties: Provided, however, That if the evidence is taken orally either party may have the right to require it to be taken by the official stenographer or reporter for the court, to be taken and transcribed and paid for as evidence in other civil actions. The court may require the contestant, or the person who has the burden of proof under the issue joined, to complete his proof in not less than five days, and the contestee, or the person not having the burden, to complete his proof in not less than five days thereafter, and each party may be given one day additional for producing evidence in rebuttal, and no greater time shall be extended, unless the court shall be satisfied that the ends of justice demand it. The court shall immediately, after the evidence is concluded, consider said contest and determine the same, and his judgment shall be filed in the office of the circuit court clerk as the judgment of the court, and shall have the same force and effect as a judgment rendered by the court in term time. The party desiring to appeal from the judgment of the court shall, on the same day after the same is rendered, execute a supersedeas bond in the same form and to the same effect as other supersedeas bonds in other civil actions for an appeal to the Court of Appeals, and the clerk shall immediately thereafterwards transmit to the clerk of the Court of Appeals the original papers in said contest, including such transcript of evidence as may be furnished or as may be required by the court or by the parties, and said record of said contest when received by the clerk of the Court of Appeals shall be immediately delivered to the chief justice, and said contest shall have precedence over all other business and causes then pending in the Court of Appeals and shall be heard and disposed of by the Court of Appeals as speedily as the exigencies in the case will admit. If on the trial of such contest the issue is finally decided in the favor of the contestee this fact shall be certified to the Secretary of State, and to the county court clerk of the county in which the cause is finally determined. If said contest is finally decided in favor of the contestant this fact shall be certified to the Secretary of State, and to the clerk of the circuit court of the county in which the contest originated; and if the contest was of a nomination that is required to be certified to the Secretary of the Secretary of State, then the Secretary of State will place the name of the success-

ful contestant on the ticket in the place of the name of the contestee to be voted for by his political party at the succeeding November election. If the nomination is one that is required to be certified to the county court clerk, then the county court clerk or clerks of the county or counties in which such candidate is to be voted for, shall place the name of the successful contestant on the ballot of his political party in lieu of the name of the contestee, to be voted for at the succeeding November election. Provided, however, That when the contest provided for in this act shall be for nomination to the offices for the State at large the notice of the contest shall be filed and the contest tried in the Franklin Circuit Court; but shall otherwise be subject to the provisions of this act.''

Section 36 of the same act is as follows, to-wit:

''Except as herein otherwise provided, primary elections under this act shall be conducted substantially as now provided by law in case of regular elections. Any omission in this act shall be supplied as nearly as practicable from the Statutes governing the November elections. This act shall be liberally construed so as to carry out its purpose, and give the voters of the different parties an opportunity to select their candidates.''

Nothing in the Primary Act, under which the rights of the parties in this proceeding must be determined, gives to the court the authority to declare an election void as is done in the Statute quoted applicable to general elections, unless it may be said that the provisions of section 36 of the Primary Act require that the provision as to general elections shall be read into and become a part of the Primary Act. So that at the very outset we are confronted with the question whether a court has the power to grant to appellant the only relief which he is now seeking.

There is no inherent power in the courts to pass upon the validity of elections or to try contested election cases; their authority is wholly statutory and must be either given expressly or by necessary implication.

There is certainly no authority expressly given in the act to declare a primary void, and it would be unfair in the absence of more explicit language to imply a meaning so utterly inconsistent with the general purposes of the act.

Not only so, but the very language of section 28 clearly and unmistakably points out the authority given

to the court, and would seem clearly to exclude the idea of any additional power. · The language is,

"If on the trial of such contest the issue is finally decided in favor of the contestee this fact shall be certified to the Secretary of State, and to the county court clerk of the county in which the cause is finally determined. If said contest is finally decided in favor of the contestant this fact shall be certified to the Secretary of State, and to the clerk of the circuit court of the county in which the contest originated."

This embraces the *whole authority* given the courts in such contests; that is, they must declare one party or the other entitled to the nomination.

The first clause of section 36 is manifestly from its very terms dealing with *the conducting* of elections when it says,

"Except as herein otherwise provided, primary elections under this act *shall be conducted* substantially as now provided by law in case of regular elections;" and clearly the second clause is merely supplementary to the first when it provides,

"Any omission in this act shall be supplied as nearly as practicable from the Statutes governing the November elections,"

and is still referring *to the conduct* of the election. There is nothing in this section which can be deemed to have the remotest reference to a contested election; especially when that whole subject has been exhaustively dealt with in a previous section of the same act.

.To interpret this act so as to empower the courts to declare a primary election void would not only be doing violence to the language of the act itself, but would to some extent defeat the very purpose of its enactment.

The well known object in passing the general primary law was to enable the great mass of the voters of political parties to select their own nominees, and to get away from many abuses and bad practices which had arisen under the domination of party committees in holding conventions or primaries, called and conducted by them or under their supervision.

Indeed, this purpose is declared in the very face of the act when it says:

"This act shall be liberally construed so as to carry out its purpose, and *give to the voters of the different parties on opportunity to select their candidates.*"

Keeping this broad purpose of the act in view, can it be said that that purpose would not be defeated by declaring a primary void between the August primary and the November election—too late for the members of a party to again have opportunity to express their preference even if permitted by law to do so—and thereby in effect refer the naming of the nominee to a party committee which is authorized by the Statute to provide for the filling of such vacancies and making such nominations? Was it not one of the paramount purposes of the Primary Act to avoid just such things?

If a general election under the statute quoted is declared void, one may be appointed temporarily to fill the office until the next election, when the people are again given the opportunity to select their official for the remainder of the term.

But not so in a primary election; if "no election" is declared in a primary, by reason of the short time and the provision that there shall be but one primary each year, the party committee provides for the selection of the candidate, and the members of that party have had no part in the selection of their nominee. So that in a county or district where a particular party is largely dominant the party committee would practically name the official *for the term,* without opportunity upon the part of the masses of the voters of that party to have a voice.

It would seem there was an excellent reason for omitting from the Primary Act the authority to declare a primary void; for if the courts had that power, they would be authorized in certain cases to virtually disfranchise the voters of a party and place the power of naming their officials in a party committee, * * * one of the chief abuses the act was intended to correct. Whereas, under the general law, by reason of the provision for elections to fill vacancies, the same result is not reached.

In the earlier history of Kentucky the courts were rarely burdened with election contests or similar litigation; and when the Legislature finally began to show a tendency to give jurisdiction to the courts in certain cases of that character, it was promptly deplored by this court.

Judge Marshall, in Newcom v. Kirtley, 13 B. M., 517, which was an election contest, says:

"Upon looking into the provisions of the statute regulating elections, and providing for the constitution of boards for determining contested elections, and regulating their procedings and declaring the effect and consequences of their decision, we are satisfied that the very purpose of providing these boards was to prevent the ordinary tribunals of justice from being harassed, and indeed overwhelmed with the investigations, and involved in the excitement to which these cases may be expected to give rise; and that their decisions, so far at least as regards questions of fact touching the number and legality or illegality of votes given for the respective candidates was intended to be final."

This spirit of the court has been consistently adhered to ever since, it having uniformly held to a strict interpretation of all powers granted to the courts by the Legislature in such cases, and declined to assume any power not clearly given.

Batman v. Magowan, 1 Met., 543, was an action by Batman, who claimed to have been elected jailer, to require the contest board provided for by statute to organize and proceed to hear a contest which he had instituted.

In discussing election contests and the relation of the courts to them, it is said:

"The decision of the contesting board is made final and conclusive by the statute. By this provision, the Legislature, evidently intended to accomplish a twofold purpose. A speedy and summary mode of deciding cases of contested election and determining finally and conclusively which one of the claimants were entitled to the office, was very important, and to effect this object, the organization of this board was provided for. Another object equally important was to withdraw these contests from the jurisdiction of the courts,"

and then proceeded to quote from Newcom v. Kirtley.

Clarke v. Rogers, 81 Ky., 43, was a suit between rival boards of council, and its purpose was to enjoin the collection of a tax imposed by one of the boards, upon the ground that they were not officers of the town at the time of the enactment of the ordinance imposing the tax.

It became important to determine in the progress of the case whether or not a new charter had been adopted by the qualified voters of the town.

In discussing that question the court said:

"It is argued here, as in the former case between the two sets of trustees, that a majority of the qualified voters did not favor the new charter; that illegal votes were cast, and other irregularities existed in the conduct of the election that rendered it invalid. A court of equity is asked, in effect, to hold another election for the purpose of determining who were legal voters, and to purge the polls by striking from the list of recorded votes those who had no right to participate in the election. The testimony for and against the right of the citizen to vote is asked to be weighed by the chancellor, and determined from the testimony. A court of equity should neither invite or claim such jurisdiction.

"The statute has provided the means of contesting elections and where there is no provision applicable to the particular case, the final result, as certified by those holding the election, must determine the issue. It would be enlarging the field of equity jurisdiction to determine that it is the duty of the chancellor to investigate the rights of the citizen at the ballot box in the election of the municipal officers of the towns and cities in the State, and by his judgment upon the issue only as to who could exercise the right of suffrage in the particular instance, select those who are to fill such offices."

The case of Stine v. Berry, 96 Ky., 66, was an action by Stine against Berry for usurpation of office, charging that he (Stine) had been rightfully elected.

The court in response to the argument that the manner of contest provided by the city charter was only cumulative, said:

"The appellant gave notice to the appellee of his purpose to contest the election before the council, but after this, withdrew his notice of contest, and instituted this action in ordinary against the appellee for the usurpation of an office, of which the latter could not be deprived, unless his vote was reduced by the contesting board so as to give him the minority vote.

"It is insisted that the manner of contesting city elections provided for by the city charter is merely cumulative, and the action in ordinary, in lieu of the writ of quo warranto, may be maintained. We understand, and so adjudge, that the statute in regard to contested elections for State and county offices is exclusive, and that when a mode of contest is provided in a city charter for contesting the election of city officers, it excludes any other remedy.

"Such statutes are enacted with remedies providing for the speedy determination of such questions, and to take from the courts all original supervisory power over such contests."

Cyc., Vol. 15, page 394, says:

"Elections belong to the political branch of the government and are beyond the control of the judicial power. The determination of election contests is a judicial function only so far as authorized by the statute."

And again:

"It has been held that where a specific mode of contesting elections has been provided by the statute that mode alone can be resorted to, and that the common law mode of inquiry by the proceedings in *quo warranto* or a writ in the nature thereof will not be entertained."

McCreary, on Elections, 3rd Edition, section 351, is as follows:

"Unless especially authorized by statute a court of chancery has no power to enjoin the holding of an election; and it has also been held that such a court has no power to try a contested election even where the statute has provided no mode of contesting. And the same court has held that a writ of injunction issued to restrain the officers of an election from holding an election, or to restrain a board of canvassers from canvassing the returns of an election, and declaring the result, is absolutely void for want of power in the court, and that such officers cannot be punished for disobedience thereto. The doctrine announced is that courts of equity have no inherent power to try contested elections, and can only exercise such power where it has been conferred by express enactment, or necessary implication therefrom."

These authorities are conclusive that election contests belong properly to the political rather than the judicial branch of government, and that it is the policy of the courts to assume no power—not even as to the made of procedure—not given expressly or by necessary implication. The Kentucky cases are quoted, not as bearing directly on the proper interpretation of the Statute, but as indicating a purpose by the courts not to assume powers which are not plainly given in matters pertaining to elections.

The courts having no power under the Primary Act to declare such an election void, the judgment must be, and is affirmed.

It is adjudged that appellee is the rightful Democratic nominee for jailer of Jefferson County, and the clerk of this court is directed to certify this fact to the proper authorities.