## Consolidation Coal Company v. King.

## King v. Consolidation Coal Company.

(Decided October 13, 1922.)

### Appeals from Johnson Circuit Court.

1. Pleading—Pleading Without Proof.—It is a fundamental rule of practice that pleading without proof or proof without pleading will not sustain a cause of action or defense, since to do so there must be both pleading and proof to sustain it. Plaintiff alleged as a basis for his relief certain false and fraudulent representations by defendant by which he was deceived into executing a deed which he sought to cancel. The falsity of the representations relied on was denied, which cast the burden on plaintiff to sustain it by proof and he introduced none upon that issue: Held, that his petition should be dismissed, and it was error to grant him any relief in the absence of such proof.

2. Vendor and Purchaser—Implied Promise.—There can be no implied promise upon the part of the vendee to pay the reasonable market value of the land conveyed in the absence of an express promise to do so when the vendor executed the deed at the instance of another who was the remote warrantor of the vendee and to whom the vendor looked for, and from whom he expected payment.

EDWARD C. O'REAR, OVERTON S. HOGAN, W. G. DEARING, ALLIE W. YOUNG and KIRK & KIRK for Consolidation Coal Co.

WHEELER & WHEELER and C. B. WHEELER for S. P. King.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the first case and affirming the second one.

The appellee in the first case, S. P. King, who is appellant in the second one, filed this equity action in the Johnson circuit court against Consolidation Coal Company (the parties to which we will hereafter refer as plaintiff

and defendant), seeking to cancel a deed which plaintiff and his wife executed to defendant on September 27, 1909, conveying to it a small parcel of land in Johnson county which had long prior thereto, and since August 27, 1889, been occupied as a school house for the local common school district under a deed which plaintiff and his wife executed to the trustees of the district but in which they stipulated that when the lot ceased to be used for school purposes it should revert to plaintiff. The ground for the relief sought, as alleged in the petition, was that defendant through its agent who procured the deed "falsely and fraudulently represented to the plaintiff that one Mr. John C. C. Mayo desired to buy the said lot and presented to the plaintiff a prepared deed to be signed and executed by him and his wife conveying the said property to the defendant Consolidation Coal Company . . . and believing the said representation of said agents and servants at the time of the presentation of said deed; that it was bought for and on behalf of said Mayo who further represented to the plaintiff that said Mayo would pay plaintiff for the land, the plaintiff and his wife signed, acknowledged and delivered to the Consolidation Coal Company on said date a deed conveying said land to it. . . . All and each of which representations were false and untrue and known by the defendant, its agents and servants at the time they were made to be false and untrue," and that plaintiff believed the representations so alleged and believed that Mayo would pay him for the land and that he was thereby deceived and induced "into signing said deed and if said transaction is permitted to stand, will defraud him out of said land." He then alleged that the land was not bought for or on behalf of Mayo and that he had nothing to do with buying it. It was further averred that the land had been abondoned by the school district and was no longer used by it for school purposes and that the title thereto, under the terms of plaintiff's deed to the district, had reverted to him before he executed the deed to defendant which he sought to cancel. Additional averments were, that the land contained about one acre and was worth $10,000.00 at the time he executed the deed to defendant, and that he had not been paid any sum therefor, and he prayed in the alternative that the deed be cancelled, but if that could not be done that he recover of defendant the sum of $10,000.00, the alleged value of the land.

Defendant's answer, as amended, denied the material averments of the petition and in another paragraph relied upon its deed and alleged that it was the owner of the land and that it contained only about one-sixth of an acre and that plaintiff, at the time he executed the deed to it, owned only a one-sixth interest in remainder of the one-sixth of an acre involved and the life interest of Caroline Bowe therein, the latter of whom, with her husband, conveyed a larger tract of land (a portion of which is that in controversy), to plaintiff on October 15, 1888, and that Caroline Bowe was only seized of and entitled to an estate for her life in the land and a one-sixth interest in remainder, which remainder interest she inherited from a deceased infant child who left no descendants, as this court so held in construing the same title in the case of Bowe v. Richmond, 33 Ky. L. R. 173, 109 S. W. 359.

Appropriate pleadings made the issues and after extensive preparation the cause was submitted to the court and a judgment rendered declaring the interest of plaintiff in the land to be as above stated and declining to cancel the deed, but the court on that hearing granted an issue out of chancery for the purpose of a jury trial of the issue as to the value of plaintiff's interest in the land at the time the deed to defendant was executed. At a subsequent term of the court a trial of that issue was had before a jury and under the instructions of the court it returned a verdict in favor of plaintiff for the sum of $500.00, upon which judgment was rendered and defendant's motion for a new trial having been overruled it has appealed, which is the first case in the caption; and plaintiff has prosecuted an independent appeal from the judgment refusing to cancel the deed and also from the judgment based on the verdict of the jury, which he says was smaller than the evidence warranted, and his appeal is the second case in the caption. Each of them was taken upon the same voluminous record and are heard together. Numerous points are discussed by counsel for the respective parties, appellant and appellee, to sustain their respective contentions as to the errors entering into each judgment in so far as it was adverse to them, but because of the conclusion we have reached it will not be necessary to refer to or discuss any of them, except the one which defendant insists defeats the cause of action altogether.

If the averments of the petition of the facts constituting the alleged fraud were sufficient for that purpose, in

the light of the fact that plaintiff read the deed and knew to whom he was executing it (a question which we do not determine), still it was incumbent upon him to prove such of the material ones as the answer put in issue, and if he failed to do so he was entitled to neither a cancellation of the deed, nor to a judgment against defendant for the proven value of the land as consideration therefor. This statement is supported by the fundamental rule of practice which says in substance that neither pleading without proof nor proof without pleading will entitle the litigant to relief. This principle of practice is so elementary and so universally recognized and applied as to require no cited adjudications or other authority in support of it.

Plaintiff, in his deposition in the equity branch of the case, as well as in his oral testimony given before the jury upon the trial of the issue submitted to it, was asked and answered these questions: "Q. Did you state that Mr. Rice told you that Mr. Mayo wanted it done, you then executed the deed? A. Mr. Rice said Mr. Mayo was having it done. Q. And when he told you that then you executed the deed, did you? A. Yes, sir. Q. And did so for the reason that you and Mayo had been friends for a long time and he had endorsed your note for $1,400.00? A. Yes, and there was more to it; Mr. Mayo said to me before that, 'Sam, you have worried along a lot with a mortgage against your place; don't let that bother you, if anything happens to you, I will pay that mortgage off and it won't cost you anything, you shan't lose your home.' Q. That was before you made the deed to the Consolidation Coal Company? A. Yes, sir. Q. That was one of the things that induced you to sign it? A. Yes, sir. Q. Was there anything said between you and Rice with regard to payment of the lot, the pay you were to get for it? A. There was nothing said in regard to the payment of it. I asked him who was having this done, who was getting it up and he said Mr. Mayo, Mr. Mayo was having it done. Q. Did you expect Mr. Mayo to settle it up for you? A. Yes, sir. Q. And you expected him to do you right about it? A. Yes, sir. Q. You understood either from reading it (deed) or from Mr. Rice, you were making the deed to the Consolidation Coal Company and not to Mr. Mayo? Yes, but I understood Mr. Mayo was having it done for his benefit, straightening up titles, &c. Q. Who did Rice tell you he was rep-

resenting in making this deed? A. I asked him who was having this done, and he said Mr. Mayo. Q. You understood Rice was working for the Consolidation Coal Company, did you? A. I did not know, &c. Q. Did Rice say that Mayo was having it done, or that Mayo wanted it done? A. That Mayo was having it done—that is my recollection about it.''

At no time or place did he testify in either trial that he looked to defendant for payment or that he expected it to pay him any sum, but on the contrary it was his intention, expectation and purpose to collect from Mayo, if from any one. Under such circumstances the law will not enforce payment under an implied contract by one from whom the implied promisee did not expect payment, or from whom he did not intend at the time to collect payment, unless such expectation and intention were superinduced by fraud practiced by the implied promisor, which is the basis of plaintiff's alleged right to recover in this case. There can be no implied promise in law where the facts necessary to raise such a promise are refuted by the testimony. However, plaintiff did not testify at all, nor did anyone for him, that the representations which he claims were made to him by defendant's agents at the time the deed was procured were false, *i. e.,* that the deed was not procured through the instigations of Mayo (who became the owner of plaintiff's entire tract after the latter sold it and was defendant's remote warrantor of title to all of it, including the school lot), or at his instance, nor was there any evidence by himself or any other witness that he had ever demanded payment of Mayo, nor even that Mayo had not paid him. It is true he was asked by his attorney if Mayo had paid him, but curiously enough an objection was sustained to the question and the witness was not permitted to answer, but there was no avowal as to what the answer would be. So that, we have a case based upon certain denied averments which the pleader claims constituted fraud forming the basis of his action and with no proof by the litigant having the burden to sustain them. Neither does plaintiff's cause receive any strength from the two circumstances, that he waited some four of five years and after Mayo's death to bring his suit, and after defendant, since obtaining the deed, had built the thriving mining town of Van Lear upon and surrounding the land in question whereby its value was tremendously increased.

But, it is insisted that defendant's answer did not put in issue the falsity of the alleged representations as to Mayo's connection with the transaction, with which, however, we cannot agree. The answer denied "that all or each of said representations was false or unture" or that it or its agents or servants at the time knew them to be untrue, or that they were made for the purpose of deceiving plaintiff into executing the deed or that he did so because of any such alleged false representations. It is true that plaintiff in his petition, after alleging the falsity of the representations, made the independent and affirmtaive one that Mayo had nothing to do with the purchase of the land by defendant, which seems not to have been specifically denied by defendant, but the insertion of that allegation in the petition was unnecessary to plaintiff's cause of action, since the fact was already alleged in a different form and it was but another method of denying the truthfulness of the representation, which had already been made in the petition in the language hereinbefore inserted. Furthermore, the parties tried the case upon the theory that the alleged fraud was denied and the court evidently so treated the pleading. Where the facts constituting the grounds for relief stated in a pleading are repeated, though in different language, it will be sufficient to form the issue if the opposing litigant in his pleading sufficiently denies any one averment of them, since the practice does not require him to deny facts pleaded by his adversary more than once. The case, as we have seen, was one in equity and the verdict of the jury was one for the purpose of advising the chancellor and the case should be disposed of on this appeal as other equity cases. It is our conclusion that the judgment refusing to cancel the deed was proper and that the court should have sustained defendant's motion for a directed verdict in its favor at the trial before the jury.

Wherefore, the judgment on the verdict of the jury against the defendant for $500.00, which is involved in the first case in the caption, is reversed and the one refusing to cancel the deed from which the second appeal was taken is affirmed with directions to dismiss the petition.