# Humbert v. Heyburn et al.

## (And Twenty-three Other Cases.)

(Decided October 9, 1931.)

GARDNER K. BYERS, VICTOR I. CARTWRIGHT, and FRANK R. CAHILL, JR., for appellants.

PETER LEE, TABB, KREIGER & HEYBURN; HARRIS COLEMAN; HERMAN G. HANDMAKER; SELLIGMAN, SELLIGMAN & GOLDSMITH; and ALFRED SELLIGMAN, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

At the regular primary election held on August 1, 1931, there were opposing candidates for the Republican

nomination for the following twenty-four offices in Jefferson county and the city of Louisville: Two county commissioners, twelve members of the board of aldermen, one controller and inspector, one state senator, Twenty-Third senatorial district, six members of the state house of representatives, one magistrate, and one constable. Within the time specified by section 1550-28, 1930 Supplement to Carroll's Kentucky Statutes, each of the twenty-four unsuccessful candidates filed a petition contesting the right to the nomination of the opposing candidate to whom the certificate of nomination had been awarded.

The allegations of all the petitions as to grounds of contest relied on are identical. Each of the petitions was dismissed below, and on this appeal the causes have been consolidated. The appellants, who were contestants below, were candidates on what was known as the Petty-Ryan ticket, and the appellees were candidates on what was known as the Harrison ticket, the two tickets representing the two factions of the Republican Party in Jefferson county and the city of Louisville.

After the petitions were filed, each of the contestees filed a special demurrer and a motion to quash the summons, and before any ruling was made upon these pleas, and within the time allowed for answer, filed a motion to strike certain allegations from the petition, a general demurrer, and answer. The court below sustained the special demurrer and the motion to quash and, in order that all questions might be presented on appeal in the event it was finally determined that the court had jurisdiction of the persons of contestees, concluded to pass on the motion to strike and the general demurrer. Both were sustained and a judgment was entered in each case dismissing the petition. Both the special demurrer and the motion to quash go to the jurisdiction and they will be considered together.

By chapter 50 of the Acts of 1930, the Legislature repealed section 28 of chapter 7 of the Acts of 1912 (section 1550-28, Carroll's Kentucky Statutes, 1922 Edition), relating to contests of primary elections, and enacted in lieu thereof what is now section 1550-28, 1930 Supplement to Kentucky Statutes. Material changes were made in the method of instituting a contest. Much confusion had arisen in the interpretation of the 1912 act and the 1930 act was passed to simplify and clarify the procedure in primary election contests. Under the 1912 act any candidate, wishing to contest the nomination of any other

candidate who was voted for at any primary election, was required to give notice in writing to the person whose nomination he intended to contest, stating the grounds of such contest, within five days from the time the election commissioners should have awarded the certificate of nomination to the candidate whose nomination was contested. The act required that the notice should be served in the same manner as a summons from the circuit court and should warn the contestee of the time and place, when and where he should be required to answer, which should not be less than three nor more than ten days after the service of the summons.

The 1930 act provides that any candidate who was voted for at any primary election may contest the right of any candidate to the nomination by filing a petition in the circuit court of the county of contestee's residence within fifteen days from the date of the primary election, stating the specific grounds relied upon for such contest and causing summons to be issued thereon returnable in ten days. The contestee must file his answer within ten days after the service of summons and no ground of contest by either party may be filed or made more definite by amendment after the expiration of the time given by the act to file such ground of contest. Contestant may file a reply within five days after answer is filed, which shall complete the pleadings. The act further provides for the prompt disposal of the case.

The petition in each case was styled a petition in equity and the circuit clerk issued a summons returnable in sixty days and requiring the contestee to answer within twenty days, whereas the summons as required by the 1930 act should have been returnable in ten days and should have required the defendant to answer within ten days. The lower court was of the opinion that the contestant had not caused a proper summons to issue and that the defect in the summons was fatal on the theory that an election contest is a special proceeding and strict adherence to the provisions of the statutes should be required. To this conclusion we are unable to agree.

That was the rule under the act of 1912, which required the contestant to prepare and cause to be served on the contestee the notice of contest. No duty devolved upon the clerk until this notice, properly executed, was returned to his office when he was required to docket the cause and immediately to notify the presiding judge of

the circuit court that the contest had been instituted. The act of 1912 did not provide the precise time when the contestee should be required to answer, but did provide that the notice should "warn the contestee of the time and place, when and where the contestee should be required to answer and defend such contest, which shall not be less than three, nor more than 10, days after the service thereof." A proceeding under the old act was a special proceeding, and the duty of preparing and causing to be served on the contestee a proper notice or summons, and naming the precise date when the contestee should be required to answer, was placed on the contestant, and it was held in a number of cases construing that statute that the provision as to time was mandatory and that a failure to state the time when the contestee should be required to answer and defend the contest was fatal to the validity of the notice and deprived the circuit court of jurisdiction. Flannery v. Shanks, 155 Ky. 184, 159 S. W. 695; Baxter v. Watts, 155 Ky. 12, 159 S. W. 608; Pflanz v. Foster, 155 Ky. 15, 159 S. W. 641; Layne v. Owsley, 210 Ky. 281, 275 S. W. 886; Leabow v. Jones, 221 Ky. 509, 299 S. W. 177; Davis v. Preston, 230 Ky. 716, 20 S. W. (2d) 723. The differences between the 1912 and 1930 acts are fundamental, and the cases above cited, construing the old act, are not controlling in determining the sufficiency of a summons under the present act. Those cases decided in substance that as the contestant was required by the act to fix the return date in the notice, his failure to comply with the statute in that respect was a failure to give any notice at all. The present act provides that the contestant shall file a petition in the circuit court and cause a summons to issue thereon returnable in ten days and the contestee is required to answer within ten days after the service of summons.

It was manifestly the purpose of the Legislature, as heretofore stated, to simplify and clarify the procedure in election contest cases and to put such cases on the same plane as other actions. It is now the duty of the clerk to issue proper summons in an election contest case as in other cases, and the contestant is not required to see that the clerk performs his duty. The contestant complies with all the requirements of the act when he files his petition and causes a summons to issue.

Section 39 of the Civil Code of Practice provides that: "An action is commenced by filing, in the office of the clerk of the proper court, a petition stating the plaintiff's cause of action; . . . and, . . . by causing a

summons to be issued, or a warning order to be made, thereon.'' Construing this and succeeding sections of the Code in Louisville & Nashville R. R. Co. v. Smith's Adm'r, 87 Ky. 501, 9 S. W. 493, 10 Ky. Law Rep. 514, in which the question of limitation was involved, it was held that it is the duty of the clerk to issue a proper summons and the plaintiff will not be prejudiced by the failure of the clerk to perform his duty in this respect. In Louisville & Nashville Railroad Co. v. Bowen, 39 S. W. 31, 32, 18 Ky. Law Rep. 1099, it was said:

> "We are of the opinion that, in this case, the plaintiff had filed his petition setting out a cause of action, and had caused summons to issue thereon in time, and that he, had done all the law required of him. It was the duty of the clerk to issue summons in accordance with law, and it was not incumbent upon the plaintiff to show that he had issued it. On the contrary, he had the right to repose confidence in the clerk not only knowing his duty, but on his performing it. This was the language of the court in the case of Railroad Co. v. Smith's Adm'r, 87 Ky. 501, 9 S. W. 493 [10 Ky. Law Rep. 514], and, we think, is conclusive of the question of limitation."
> To the same effect are Morris v. Cumberland Producing & Refining Company, 187 Ky. 15, 218 S. W. 302, and Casey v. Newport Rolling Mill Company, 156 Ky. 623, 161 S. W. 528.

The purpose of the summons is to apprise the defendant that a petition has been filed against him. In each of the cases before us the contestee appeared within the time required by law and filed a motion to quash the summons. He then knew the nature of the proceeding. The law apprised him that he must answer within ten days after the service of the summons and he was not prejudiced by the error of the clerk in fixing the time in the summons at twenty days after service. When the contestant has filed his petition and caused a summons to issue, which is the only preliminary duty imposed upon him by the present statute, his right of action should not be defeated by the failure of the clerk to perform his duty in issuing a proper summons. We conclude that the court erred in sustaining the special demurrer and the motion to quash the summons.

This brings us to a consideration of the petition and of the question as to whether or not it stated a cause of

action. Conceding for the purposes of this opinion that the motion to strike certain allegations from the petition should have been overruled, we shall proceed to determine whether or not the demurrer to the petition should have been sustained. The petition alleged:

That certain named persons, including the defendant and others, participating in the management of the candidacy of the candidates on the Harrison ticket, "conspired among themselves and with each other, and with other confederates whose names are unknown to plaintiff, to prevent a free and equal Primary Election on August 1, 1931, and to procure the apparent and pretended Election of the candidates on the Harrison Ticket including this defendant, regardless of whether they might or might not receive a majority of the legal votes cast in the City and County for the respective nominations for which they were candidates; and the said conspirators aforesaid conspired to procure such election by means of fraud, intimidation, bribery and practically every known unlawful means of voting at the Polls on August 1, 1931.

"That the conspiracy aforesaid was fully carried into execution by the said conspirators and those in connection with them and through whom they operated, and was finally consummated by the returns of the Primary Election showing that all the candidates for the various nominations on the Harrison Ticket, including the defendant, had received the highest number of votes cast for any candidate for the respective office for which they were candidates, and by the award and issuance of certificates of nomination to them and to the defendant by the Board of Election Commissioners of Jefferson County, Kentucky.

"That it was pursuant to and in execution of the said conspiracy that the acts of fraud, intimidation, bribery and other illegal and wrongful conduct hereinafter set out were perpetrated and brought to pass. . . . The conspirators carried into effect their conspiracy by committing wholesale and general fraud reaching into practically every precinct in the City of Louisville and Jefferson County, by voting in the various precincts hundreds of names of registered voters who did not appear at the Polls themselves in person nor cast their own ballots; by giving out sample Ballots of the Harrison Ticket inside of the Polls and in many instances inside of

the booths; by voting many voters openly and on the table; by intimidation of voters who came to the Polls; by bribery and the buying of hundreds of votes; by the use of the chain ballot system of voting; by the use of cut out sample Harrison Ticket ballots; by repeaters; by stuffing ballot boxes; by the Harrison Ticket officers within the Polls actually voting the ballots for voters. . . .

"Plaintiff further alleges that in many of the precincts the Election Officers and other workers for the Petty-Ryans Ticket, were bribed, browbeaten and bluffed by the Harrison. Ticket workers and Election Officers and in many instances where the Harrison crowd resorted to one or the other of the above named tactics, the Petty-Ryans Ticket candidates were without representation in said Polls. In many of the precincts the voters themselves were bribed, browbeaten or bluffed into voting the Harrison Ticket and in many instances the Harrison Organization Election Officers or workers actually voted the ballots for the voters. . . .

"Plaintiff further alleges that the Corrupt Practices Act was violated in many respects and especially by the use of vast sums of money in excess of the amount provided by law, on behalf of this defendant and other candidates on the Harrison Ticket.

"Plaintiff further alleges in addition to the general fraud and wholesale fraud perpetrated throughout the City of Louisville and Jefferson County and crimes committed in the execution of the conspiracy by the Harrison Administration Organization, its conspirators and henchmen, the following specific cases of fraud, intimidation, bribery, illegal voting and other irregularities and wrongs too numerous to mention occurred in and about the Polls of the following named precincts."

Then follows a catalogued list by ward and precinct of the alleged instances of violations of the law, including bribery, by the alleged conspirators. The concluding allegation relative to violations of the law in the Eighth ward reads:

"In each and every precinct from the First precinct to the Sixty-fourth precinct inclusive, in the 8th ward, Harrison workers were within the fifty-foot line of the Polls and in many instances were

within the Polls passing out Harrison Ticket Sample Ballots and intimidating the voters, and in this Ward and every Precinct hereto, money was freely used by the Harrison organization men, buying colored votes."

The following allegation appears as to the Twelfth Ward:

"In the southwest section of Louisville, known as 'Little Africa,' it is known that the sum of $400 was paid by the Harrison administration for the use in each precinct in that section in the buying of votes and bribing of opposition workers."

It is then alleged that the result in the primary election was brought about by a general widespread conspiracy, including fraud, bribery, intimidation, and violation of the Corrupt Practices Act, and the petition concludes with this allegation:

"Plaintiff in conclusion alleges that all of the untrue, inaccurate and incorrect returns, count and tabulation of the ballots in the said Primary were caused by the aforesaid conspiracy of the Harrison Administration Organization, its conspirators and henchmen in the perpetration of general wholesale fraud to defeat the will of the people."

The prayer of the petition is that the plaintiff be adjudged by the court to have received a plurality of the lawful votes cast, that he was nominated as Republican candidate for the office, and that his name be caused to appear on the ballot at the general election to be held November 3, 1931.

It is nowhere averred in terms in the petition that the alleged acts of bribery were committed with the defendants' knowledge or consent, nor is there any averment that the plaintiff did not violate the provisions of the Corrupt Practices Act. The allegations of the petition as to the number and names of illegal voters who voted for contestee are too indefinite to render the petition sufficient for the purpose of purging the election of unlawful ballots. The names of the voters who cast the alleged illegal votes for the contestee are not given. It has been held that in election contest cases where the ground of contest was the casting of ineligible votes, the contestant should name the persons whose votes he questions as well as the facts which rendered them ineligible.

Weller v. Mueninghoff, 155 Ky. 77, 159 S. W. 632; Clark v. Robinson, 159 Ky. 25, 166 S. W. 801; Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753; Johnson v. Little, 176 Ky. 505, 196 S. W. 156, Ann. Cas. 1918A, 70; Thurman v. Alvey, 192 Ky. 341, 233 S. W. 749.

Appellant's contention, however, is that the petition stated a cause of action under the Corrupt Practices Act (Kentucky Statutes, sec. 1565b-1 et seq.). From the extracts, supra, taken from the petition, it will be noted that it is charged that the defendant and others entered into a conspiracy to procure the election of candidates on the Harrison ticket, including the defendant, by means of fraud, intimidation, bribery, and other unlawful acts; that the conspiracy was fully carried into execution; and that it was pursuant to and in execution of such conspiracy that the acts of bribery thereinafter set out were perpetrated. Many instances of bribery are alleged and a violation of the Corrupt Practices Act charged. It is urged that the petition fails to allege any specific violation of the Corrupt Practices Act or that the act was violated either by the contestee or by others in his behalf with his knowledge or consent and is therefore fatally defective. The purpose of The Corrupt Practices Act is to preserve the purity of elections, and, as said in Charles v. Flanary, 192 Ky. 511, 233 S. W. 904, courts should lend a willing hand in its enforcement where the facts and circumstances justify it. The allegation that contestee conspired with others to commit various frauds, including bribery of voters, coupled with the further allegation that pursuant to such conspiracy voters and officers of election were bribed, clearly implies that the Corrupt Practices Act was violated with defendants' knowledge or consent. The petition is sufficient in this respect. It is not necessary to specify the names of voters bribed, or their number, in charging a violation of the Corrupt Practices Act. Bingham v. Smith & Duff, 210 Ky. 256, 275 S. W. 811. In Combs v. Brock, 240 Ky. 269, 41 S. W. (2d), ——, decided September 29, 1931, the court said:

> "The Corrupt Practices Act characterizes a variety of acts and omissions as offensive to its provisions, and it would, no doubt, be incumbent upon the pleader invoking them to specify in his pleading the particular denounced act or omission contained in the statute as constituting its violation, and we do not construe the provisions of the 1930 act, supra,

when it says that the contest pleading shall set out 'the specific grounds relied upon,' to require any different rule of pleading, or more particularity than what we have heretofore adopted in the cases supra. Therefore, when plaintiff averred in the fourth paragraph of his petition, and in the last sentence of the third paragraph, that defendant had violated the provisions of the Corrupt Practices Act by bribing voters to cast their ballots for him, and procuring others to do so with his knowledge and consent, he sufficiently stated the ground of contest contained in section 1565b-11, supra, of our Statutes.''

The petition, however, is fatally defective, in that it fails to allege that the contestant did not violate the provisions of the act himself. The only prayer in the petition is that the contestant be adjudged to have received a plurality of the votes and that he be declared the duly nominated candidate of the Republican Party.

When it is proved that the candidate who received the certificate of nomination has violated the Corrupt Practices Act, his nomination will be declared void and the candidate who received the next highest number of votes, and who is a party to the proceeding, is entitled to be declared the nominee provided he did not violate the act. Before he can be declared the nominee, however, he must establish by proof that he had not violated the act. Mellon v. Goble, 210 Ky. 711, 276 S. W. 830. As a necessary corollary that fact must be pleaded. It is a fundamental rule of pleading that a fact necessary to be proven must be alleged in the pleading, and proof without pleading or pleading without proof will not sustain a cause of action. Consolidation Coal Company v. King, 196 Ky. 54, 244 S. W. 303; Cecil v. Cecil's Executors, 185 Ky. 787, 215 S. W. 794, 795. In the last-cited case, the following from 23 Cyc. 817 was quoted with approval:

''To render a valid judgment, the court must have jurisdiction, not only of the party and the general subject-matter, but also of the particular question which it assumes to decide, or of the particular remedy or relief which it assumes to grant; and a judgment of a court upon a subject, which may be within its general jurisdiction, but which is not brought before it by any statement or claim of the party and is foreign to the issues sumbitted for its determination, is void.''

Having failed to allege that he did not violate the Corrupt Practices Act, the contestant is not entitled to a judgment on the pleading for the specific relief prayed for in the petition; that is, that he be declared the nominee. Under the rule applied in Green v. Cawood, 230 Ky. 823, 20 S. W. (2d) 984; McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; and other cases therein cited, a candidate, although he is not entitled to the nomination, may contest the election of his opponent on the ground of violation of the Corrupt Practices Act, but a judgment on the pleadings in the instant case, merely declaring contestee's nomination void, could not be entered since no such specific relief is asked. Section 90, Civil Code of Practice, note 59.

It follows that the demurrer to the petition was properly sustained, and the judgment in each case is affirmed.

Whole court sitting.