George DAVIS, Appellant,

v.

H. D. BRITT, Sheriff, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 8, 1965.

Leland H. Logan, Bowling Green, for appellant.

G. D. Milliken, Jr., Bowling Green, Douglas Keen, Scottsville, for appellees.

DAVIS, Commissioner.

This election contest involves the Republican nomination for constable in Magisterial District No. 3 of Allen County at the primary held May 25, 1965. KRS 122.020. On the face of the returns appellant received 125 votes in the two precincts which compose the district. Appellee John Frost received 165 votes, and a third candidate polled 59 votes. The trial court dismissed the contest because the complaint failed to assert a claim upon which relief could be granted. Hence, this appeal presents the question whether appellant stated a cause of action.

The original complaint was filed June 7, 1965; it is cast in eight numbered paragraphs. The first is an introductory statement alleging appellant's qualifications as a candidate for the office of constable in the district. It is not in issue.

The second paragraph recites the results of the primary, and no issue is presented as to that.

The next two paragraphs assert that certain illegal voters cast ballots in Precincts No. 3 and No. 6 (comprising the district). The names of the alleged illegal voters are set forth, and the allegation is made that each of the named voters lacked the requisite residential qualifications of a legal voter. The sum of the persons named is seventy, of whom 57 are said to have voted illegally in Precinct No. 6, and thirteen in Precinct No. 3. There is no allegation with respect to the candidate for whom any of these voters had cast ballots, nor is there any claim that proof of how each voted is unavailable.

The fifth paragraph contains a perplexing declaration that one named voter was paid a sum of money " * * * to vote in

Precinct No. 6 for a candidate in the same race but not for this plaintiff * * *." This averment is followed by the statement that five other named persons " * * * were also paid a sum of money for their vote in Precinct No. 6 of the said election * * *." Of the latter six voters there is no statement they voted " * * * but not for this plaintiff * * *." This paragraph contains no plea that any or all of these allegedly bribed voters were so prostituted by any candidate, nor that the illegal payment for votes was accomplished with the knowledge or consent of any candidate. Three of these seven voters had been listed already as illegal voters of Precinct No. 6.

Paragraph six contains the claim that some 31 persons (some of whom are specifically named and some designated as "six votes in Hassie Smalling's family") were eligible to vote in the two precincts, but did not do so because of " * * * failure to transfer their registration * * *." We may speculate that this reference is to the transfer of registration prescribed by KRS 117.645, but are left to the further speculation whether the failure of the persons to transfer registration was due to their own inattention or by reason of an annexation or change of precinct boundaries. The complaint asserts that all the people " * * * did not vote for this plaintiff but would have done so if their votes had been cast * * *." It is not claimed that they sought to vote for anybody.

The seventh paragraph merely reiterates the charge that all of the persons referred to in earlier paragraphs were illegal voters, and consequently the nomination of Frost should be set aside and appellant declared to be the winner.

The last paragraph is a plea in alternative, seeking to have the entire primary vitiated in this race, on the claim that " * * * if the Court should find that the election * * * was fraught with fraud, intimidation, bribery or violence * * *" the election in the constable race should be declared void. Significantly there is no affirmative claim that the election was indeed so tainted.

On June 26, 1965 (not within the fifteen days specified in KRS 122.020), appellant filed an amended complaint asking that the names of sixteen persons alleged to have voted illegally be stricken from the original complaint. By the same amendment appellant recited the names of eight *additional* persons whose votes were said to have been illegal because of residential disqualifications of the voters.

Even later appellant filed a second amendment striking from the original complaint the names of seven persons whose votes had at first been assailed by appellant. In this amendment appellant set forth the names of eight persons whose votes are said to be illegal for lack of residential qualifications. In the same amendment it is said that one legal voter sought to vote and was denied the right (no averment is made as to the candidate for whom he would have voted). Repetition is made as to two of the same persons charged as illegal voters in the original complaint.

■ It is plain, we think, that the trial court correctly ruled that the pleadings we have abstracted did not state facts upon which any relief could be granted.

The amended complaints had the effect of deducting 23 of 70 voters named in the original complaint. This left 47—less than 20% of the 349 votes cast. Even had there been sufficient alleged illegal voters to constitute 20% of the entire vote, no cause of action was stated absent an allegation that proof was unavailable as to how they voted. Napier v. Noplis, Ky., 318 S.W.2d 875.

■ Appellant was not entitled to *add* names of claimed illegal voters by amendments filed after the time for filing the original contest. Durr v. Washington County, Ky., 339 S.W.2d 444. Therefore, the names set out in the amended complaints may not be used in testing whether 20% of the total vote is challenged.

The efforts to "throw out" the election on the ground of violation of the "Corrupt Practices Act," KRS, Ch. 123, are of no avail. Appellant did not claim that appellee Frost committed any violation of that Act, nor that any violation was committed in his behalf by others with his knowledge. Scalf v. Pursifull, 250 Ky. 447, 63 S.W.2d 504.

Neither did appellant affirm that he himself was innocent of violation of the same Act. Humbert v. Heyburn, 240 Ky. 405, 42 S.W.2d 538. We do not premise our decision on this point, but better practice requires the disavowal of the pleader's own guilt in such cases.

The judgment is affirmed.