TRUMAN JONES v. A. C. FISHER, Chairman of Board of Supervisors of POLK COUNTY, et al., Appellants.

**Elections:** CONTESTS: PRIMARY ELECTIONS: STATUTES. The provisions
1 of the statutes by which a court of contest is given authority to examine witnesses and determine contested elections to county offices have no application to primary elections.

**Primary elections:** CONTEST: AUTHORITY OF SUPERVISORS. The power
2 of the supervisors in case of a contested primary election is limited to a recount of the ballots as cast, on a showing of fraud, error or mistake in the count as returned by the judges of the election; they have no authority to inquire into the legality of a ballot which has been received by the judges.

**Same:** REVIEW OF ILLEGAL ACTION OF SUPERVISORS: *Certiorari.* Al-
3 though the statute authorizing a recount of the ballots by the supervisors in a contested primary election provides that their action in so doing shall be final, such provision does not prevent a review of the illegal act of the board in determining a matter not within its jurisdiction; and *certiorari* is the proper remedy in such case.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT, JUDGE.

TUESDAY, OCTOBER 15, 1912.

A proceeding by certiorari was instituted in the lower court to annul a certain alleged illegal action of the board of supervisors of Polk county, as a board of canvassers, in declaring the result of a recount of the ballots cast at a primary election, as a result of which recount it was declared that A. C. Fisher was the candidate of the Republican party for the office of member of the board of supervisors. The court annulled the action of the board. From this decision of the court, the defendants, who are members of the board of supervisors, and the county auditor appeal.—*Affirmed.*

*Read & Read* and *John J. Halloran,* for appellants.

*John McLennan* and *E. J. Kelly,* for appellee.

McCLAIN, C. J.—The plaintiff, Truman Jones, and one A. C. Fisher, who as chairman of the board of supervisors is one of the defendants in this action, were opposing candidates for the Republican nomination to the office of supervisor at the primary election held June 3, 1912. The returns of the election from all the voting precincts gave Jones a majority of one vote over Fisher. Within the time provided by law, Fisher filed with the board of supervisors a verified statement alleging fraud and mistake in the returns from the First precinct of Bloomfield township, and that illegal votes had been received in that precinct, and demanding a recount of the ballots as provided by the statute regulating primary elections. The board ordered a recount, and found that the vote as shown by the voting machines used in such precinct had been cor-

rectly returned, but it proceeded further, and examined witnesses for the purpose of determining whether any illegal votes had been recorded, and, finding as a result of such investigation that three illegal votes had been recorded in said precinct for Jones, it deducted that number of votes from the total number originally returned for him, and declared· that a majority of the votes cast at the county primary was in favor of Fisher. Thereupon this proceeding by certiorari was instituted to· annul the findings of the board of supervisors made as a result of its action in pretending to recount the votes, and the lower court held that the board was without jurisdiction to go beyond the recorded votes as shown by the voting machines, and receive evidence as to whether illegal votes had been recorded, and it therefore annulled the action of the board. We are asked upon this appeal to determine whether the lower court erred in so holding.

There are provisions in the Code for the determination of contested elections to county offices by a court of contest which is given authority to examine witnesses and determine who is entitled as the result of the election to 1. ELECTIONS:           hold the office to which the contest is pro-
contests:
primary elec-         secuted, with a right of appeal to the district
tions: statutes.      court. See Code, sections 1198-1222. But these provisions have no application to primary elections which are now provided for ·by chapter 51 of the Acts of the Thirty-Second General Assembly (Code Supplement, sections 1087-a1–1087-a35), as amended by chapter 69 of the Acts of the Thirty-Third General Assembly.

The provisions for a contest with reference to the result of a primary election are those found in section 9 of the amending act, which, so far as it is material, reads as follows:

Any candidate whose name appears upon the official primary ballot of any voting precinct may require the board of supervisors of the county in which such precinct

is situated to recount the ballots cast in any such precinct as to the office for which he was a candidate, at the time fixed for canvassing the returns of the judges of election, by filing with the county auditor . . . a showing in writing duly sworn to by such candidate, that fraud was committed or error or mistake made in counting or returning the votes cast in any such precinct as to the office for which he was a candidate. The showing must be specific, and from it there must appear reasonable ground to believe that a recount would produce a result as to his candidacy different from the returns made by the judges. If such showing is made to the satisfaction of the board, it shall thereupon recount the ballots cast in any such precinct for the office for which the contestant was a candidate, and if the result reached by the board on the recount of the ballots as to such office be different from that returned by the judges of election, it shall be substituted therefor as the true and correct return, and so regarded in all subsequent proceedings. The action of the board shall be final and no other contest of any kind shall be permitted.

It will be observed that it is fraud committed, or error or mistake made, in counting or returning the votes cast in any such precinct which may be complained of, and

2. PRIMARY ELECTIONS: contest: authority of supervisors.

that the board of supervisors is directed upon the proper showing being made to recount the ballots cast in any such precinct, and if, as a result of such recount the returns of those cast in the precinct be found incorrect, the true returns as found by the board of supervisors shall be substituted and the result of the primary be declared accordingly. In short, the power conferred upon the board of supervisors is to recount the ballots actually cast for the purpose of correcting the returns, if they be found erroneous through fraud or mistake. No authority is conferred upon the board to determine whether the persons who cast ballots in the precinct at the primary election were entitled to cast such ballots. The judges of the primary election seem to have no duty imposed upon them with reference to the right of one proposing to

cast a primary ballot to do so, save that of entertaining a challenge, and requiring the proposed voter to take the prescribed oath to his qualifications, and then to count the ballots received and make return of the results of the election. See Code Supplement, sections 1087-a9 and 1087-a17. We can not discover from the reading of the section of the act above quoted that the board of supervisors, in case the returns from any precinct are challenged, has authority to do more than recount the ballots and verify or correct the returns.

The voting at the precinct in question was by voting machines, and therefore the sole function of the board of supervisors making a recount was to verify the votes as shown by the machines for the purpose of determining whether the returns of such votes were correct. Having ascertained by examination of the machines that the votes shown were correctly returned, and the recount was concluded, and the board had no other authority than that of announcing the result in accordance with the correct returns. That the action of the board was wholly unauthorized and illegal is apparent from another consideration. If they had authority to inquire into the validity of the votes by taking evidence of voters as to their qualifications, then they should have determined anew the result of the primary election in the precinct in question. Evidence was introduced before them tending to show other illegal votes were cast than the three illegal ones which were cast for Jones and which they rejected, but, without any finding as to whether any other illegal votes were cast and for whom they were cast, the board simply determined that three illegal votes were cast for Jones, and thereupon the conclusion was reached that these three votes should be deducted from the total in his favor. It may have been that, if the board had passed upon the evidence presented, it would have been found that illegal votes were also cast for Fisher which should be deducted from the total of the votes returned

for him. The consideration last suggested is, however, as we view it, immaterial; for we hold that the board had no authority to examine witnesses in the attempt to ascertain whether the persons who were allowed to vote at the primary were entitled to do so. The board of supervisors can exercise no authority with reference to the primary election beyond that conferred upon it by statute, and the statute plainly does not confer upon the board the power to inquire into the right of the voter to cast the ballot which has been received by the judges of the primary election.

For appellant it is contended that the lower court had no authority to inquire into the legality of the action of the board for the reason that, as provided in the section of the act already quoted, "the action of the board shall be final and no other contest of any kind shall be permitted." But the lower court did not attempt to review the action of the board for the purpose of determining whether in the exercise of the power conferred upon it, a correct result had been reached. The court did not attempt to retry the case. It was asked to find that the board attempted to exercise a jurisdiction and authority not conferred upon it by statute, and we see nothing in the language just quoted to preclude such an inquiry. The writ of certiorari may be granted "in all cases where an inferior tribunal, board, or officer exercising judicial functions, is alleged to have exceeded his proper jurisdiction or is otherwise acting illegally" (Code, section 4154), and a statutory provision making the finding of the board of supervisors conclusive as to a matter within its jurisdiction does not preclude an inquiry as to whether its action was in excess of its jurisdiction. Many cases will be found in our reports where the jurisdiction of a board or lower tribunal has been inquired into on certiorari, although no appeal or other

3. SAME: review of illegal action of supervisors: *certiorari.*

method of reviewing the correctness of the action of such board or tribunal has been provided.

There is a further contention for the appellant that the remedy of plaintiff, if any, was by mandamus to compel the board to act, and not by certiorari. But it appears that the board did act, and did find the returns of the primary election, so far as it was authorized to inquire into the matter, were correct. Its action in conducting a wholly unauthorized inquiry and in announcing as a result of such inquiry that the returns were incorrect and should be set aside was outside of its jurisdiction and illegal.

Judgment of the trial court was in accordance with the law, and it is—*Affirmed.*