## Craft v. Davidson, et al.

## Williamson v. Same.

(Decided October 22, 1920.)

### Appeals from Floyd Circuit Court.

1.   Elections—Contest—No Right of at Common Law—Quo Warranto.
—No one has the right at common law to fill an office and the only

remèdy of the common law contesting one's right to an office was by the right of quo warranto or information in the nature thereof which was a proceeding by the sovereignty to oust a usurper of an office.

2. Elections—Contest.—Statutes in most states have provided remedies for contesting elections whereby a defeated candidate on the face of the returns may litigate the right to the office with his successful opponent.

3. Elections—Contest for Municipal Officers—Other Than Municipal.—The tribunal for the trial of election contests for municipal officers in cities of the fifth class in this Commonwealth is the board of council of such cities which is provided for in sections 3635 and 3659 of Carroll's Kentucky Statutes, edition 1915, they being parts of the charter for cities of that class, while a contest for the election to offices other than municipal is provided for by subsection 12 of section 1596a of the same statutes.

4. Elections—Contest Over the Election of Municipal Officers.—Although the municipal council of cities of the fifth class is given by statute jurisdiction of contests over the election of municipal officers such jurisdiction does not attach when the title of all or a majorty of the members of the council is involved. In that case the circuit court has jurisdiction under the terms of subsection 12 of section 1596a.

5. Elections—Certificate of Canvassing Board.—The certificate of the canvassing board of an election is prima facie evidence of the result thereof, which however may be overcome by counting the ballots. But, before the ballots may be counted the contestant who questions the correctness of the certificate must prove by clear and satisfactory evidence that the ballot boxes have been kept as the statute requires and that the ballots have not been tampered with since the election and that they are the identical ones cast at the election.

6. Appeal and Error—Absence of Evidence—Presumption.—In the absence of all the testimony heard by the trial court it will be presumed on appeal that the testimony omitted from the record would sustain the judgment complained of.

7. Elections—Contest—Order Appointing Commissioners to Count Ballots.—An order of the court in the trial of a contested election case appointing commissioners to open the ballot boxes and count the ballots is only an interlocutory order which may be reconsidered and set aside upon sufficient proof at any time before final judgment.

8. Elections—Adoption of Emblem and Device.—In order for candidates to adopt the same party emblem and the same device so that their names may be grouped in one column on the ballot it is not necessary that they should sign and file with the county clerk their joint petition, but such grouping by the clerk may be done when the petitions filed with him are identical and are for the filling of no more offices than are to be elected.

9.  Elections—Contest—Filing Expense Account.—For a contestant
    in an election contest case to avail himself of the failure of his op-
    ponent to comply with the requirements of "The Corrupt Practice
    Act" by filing expense accounts before and after the election he
    must allege such failure in his contest petition.

C. B. WHEELER for appellants.

HAMILTON & WALLEN and J. D. HARKINS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

These two cases, heard together below and treated the
same way here, involve contests over two of the six mem-
berships in the board of councilmen of the city of Pres-
tonsburg, Kentucky. The right to maintain the actions
is claimed to exist because of the provisions of subsec-
tion 12 of section 1596a of Carroll's Kentucky Statutes,
edition 1915. The final judgment dismissed each petition
and plaintiffs seeking a reversal of the judgments prose-
cute these appeals.

The record presents the preliminary question of the jur-
isdiction of the court to entertain the suits, which question
is neither argued nor referred to by counsel for either
side, but which we deem necessary to first dispose of. No
one has an inherent right to an office, because of which fact
there existed no remedy at common law by which an un-
successful candidate upon the face of the returns could
contest the right of his opponent to the office involved.
15 Cyc. 393-394; 20 Corpus Juris 209-210; 9 R. C. L.
1157; Pflanz v. Foster, 155 Ky. 15, and Stine v. Berry, 96
Ky. 65. This principle is thus stated in the Pflanz case:
"There is no inherent power in the courts to pass upon
the validity of elections or to try contested election cases;
their authority is wholly statutory and must be either
given expressly or by necessary implication." But most
if not all the states by their legislatures have prescribed
statutory remedies whereby a defeated candidate may
contest with his opponent the right to the office. Our
statute conferring such right is subsection 12, *supra,*
and in so far as it makes provision for contesting the
office here involved it says: "In case there shall be a
contest of the election . . . of any police judge,
clerk, marshal or other elective municipal officer, where
there is no other provision by law for determining the
contested election of such municipal officer, the contest
shall be made by the filing of a petition in the circuit

court of the county where the contestee resided." The opinions of the various courts are in conflict as to whether such statutory remedies supersede and are exclusive of the common law writ of *quo warranto*, but this court in the case of Stack v. Commonwealth, 118 Ky. 481, aligned itself with the majority of the courts holding that a statutory contest remedy did not repeal or supersede the remedy by which courts at the instance of the sovereignty could oust a usurper from office which was the only function of the common law writ of *quo warranto* and which relief is now afforded in this Commonwealth by an ordinary action as provided in section 480 of the Civil Code of Practice. But the instant cases are not proceedings to oust a usurper from office and we need concern ourselves no further about this question.

There is likewise a conflict in the opinions as to whether the statutory right given to municipal councils to judge of the election and qualification of its members, to hear and determine contests of municipal offices are exclusive or only cumulative with the jurisdiction to hear and determine election contests conferred by statute upon the courts. 20 Corpus Juris 15; 15 Cyc. 396-397, and 9 R. C. L. 1160-1161. But in those jurisdictions, where the remedy before the municipal council is held to be cumulative with a contest suit in court it is admitted that it is within the power of the legislature providing the respective remedies to expressly or by necessary implication make the one exclusive of the other. Hence in 9 R. C. L., *supra*, it is said: "The legislature may, however, grant to city councils the right of final determination of contests for membership and exclude the courts from consideration of the question on the facts of the case." See also New Orleans v. Morgan, 18 Am. Dec. 232; State v. Kempf, 69 Wis. 470, 2 A. S. R. 753. But the question is no longer an open one with us since it was expressly held in the case of Stine v. Berry, *supra*, and impliedly so in the case of Scholl v. Bell, 125 Ky. 750, that municipal councils possessed exclusive jurisdiction for the trial of contest cases involving the right to a municipal office, the court in the Stine case saying: "We understand, and so adjudge, that the statute in regard to contested elections for state and county offices is exclusive, and that when a mode of contest is provided in a city charter for contesting the election of city officers, it excludes any other remedy." In the Scholl case the court took jurisdiction because, and only because, the title to

the office of each member of the council was involved and
for that reason the tribunal provided by law to hear and
determine the contest was disqualified on account of
personal interest.   Upon this point the court said: ''In
all cases where there is a contest over the seat of a
minority of the members of the council, section 2771 ap-
plies; but where all, or more than a majority, are con-
tested, then the contest must be by suit in the circuit
court, as in a contest over county offices.   It never was
the intention of the lawmakers that one should be the
judge of his own election.''   Section 2771, referred to in
the excerpt, is a part of the charter of cities of the first
class and it provides in part that ''each board shall judge
the eligibility and the election of its members,'' etc., but
since the title of each member of the board to his office was
involved in that case the court held that the contest pro-
ceedings were rightfully brought in the circuit court as
is provided in subsection 12 of section 1596a, *supra*. That
subsection confers jurisdiction upon the circuit courts in
the case of a contest over municipal offices only ''where
there is no other provision by law for determining the
contest election of such municipal officer.''   Section 3635
of the statute is a part of the charter of cities of the fifth
class and it contains the exact provision with reference
to the council being the judge of the qualification and
election of its members as does section 2771 relative to
cities of the first class.   In addition to the powers con-
ferred upon the council by section 3635 section 3659, be-
ing a part of the same charter of fifth class cities, among
other things, says: ''And contested elections in all cities
for municipal officers shall be decided as may be provided
by ordinance.''

The city council for cities of the fifth class is com-
posed of six members and they are elected by all the quali-
fied voters in the city from the city at large.   No candi-
date for the office of councilman either runs for or is
elected to any particular one of the six seats to be filled.
Each candidate in the election is opposing all others and
the six receiving the highest number of legal votes are
elected and entitled to serve.   It is therefore necessarily
true that in contest proceedings the title of each of the
contestee members of the council to their respective offices
is involved even in a single contest, for it might be that
the contestant received a greater number of legal votes
than either of those who were declared elected, and in case
of there being two contests, as is true here, one contestant

might be adjudged to have defeated all or a portion of the contestees and the other to have done likewise. In the two instant cases the petitions allege that each contestant received more legal votes than did either of the four contestees and under such circumstances it necessarily follows that each of the four contestees was properly made a party and that the title to each of their offices is involved. This view is borne out by the text in the volume of Corpus Juris, *supra,* 223, which says: "But where several candidates are voted for on the same ticket (as was true with appellees here), each candidate being opposed to every other candidate for the office, and none of them running for any particular one of the several places to be filled, all successful candidates and all persons who were candidates in the same election are necessary parties."

In the case of Conway v. Sexton, 243 Ill. 59, 90 N. E. Rep. 203, the plaintiff contested the right to the office of one of the five trustees of a sanitary district created and organized under an act of the legislature of that state. The contestant made all five of those who had been declared elected parties defendants and contestees in his suit. It was objected that there was a misjoinder of parties, but the court held otherwise, saying: "Under this statute five trustees were to be elected. Each candidate was opposed to every other candidate who was running for the office of trustee. Neither candidate was running for any particular one of the five places to be filled, but under the law the five candidates that received the highest number of votes at this election were elected to the five positions." The same proposition is in effect held by this court in the case of Burns v. Lackey, 171 Ky. 21. The office of four members of the city council of Prestonsburg is involved in these cases which is more than a majority of the members of the board, thus disqualifying that body under the doctrine above discussed from sitting as a contest tribunal in these cases. We therefore conclude that the provisions, *supra,* of the charter of cities of the fifth class conferred exclusive jurisdiction upon the municipal council of said cities to try contested elections such as are involved here, but when that body is disqualified because of a majority of its members being directly interested, the jurisdiction to hear and try the contest is conferred upon the circuit court, since necessarily a provision for the trial of cases before a tribunal whose title to the office and whose right to sit are involved is no provision at all.

The circuit court then having jurisdiction under the facts in these cases, it becomes necessary to dispose of them upon their merits. The petitions alleged the same acts against each of the contestees or defendants in each of the suits as grounds of contest, which were: (1) That a stated number of illegal votes had been cast for each of the defendants and which were more than sufficient to reduce their total vote below that received by the contestants, and (2) that the officers of the election erroneously through mistake or otherwise failed to count all the votes received by contestants and counted for contestees more votes than they received which if corrected would give the contestants more than the necessary votes to elect them, and they asked that the ballot boxes be opened and the court recount the ballots.

The first ground of contest with reference to the casting of illegal ballots for the contestees was virtually abandoned in the preparation of the cases, since but little proof was attempted to be taken upon that issue, and what was taken wholly failed to establish it and it is admitted in briefs on this appeal that there was an entire failure to sustain that ground.

As to the second ground the court, upon the hearing of the motion to open the ballot boxes, appointed two commissioners for that purpose, who after being sworn opened the boxes and made a report showing the number of votes that the commissioners found each of the eleven candidates for member of the council received at the election. This report gave to the contestant Williams 161 votes and to the contestant Craft 160 votes, or more than the canvassing board certified as having been received by either the contestees Layne, Harris, May or Blackburn. On the same day that the report of the commissioners was filed the contestees entered a motion that the court set aside and vacate the order appointing the commissioners and directing them to recount the ballots, and to quash their report, which motion was continued until the next term of the court when it was sustained and the causes were submitted for final judgment and the petitions were each dismissed. The order of the court sustaining the motion to open the ballot boxes and in which the commissioners were appointed recites that the court heard evidence thereon as to the preservation of the ballots and in the order sustaining the motion of contestees to set aside the order authorizing a recount of the ballots it is said that "The court sufficiently advised upon proof

heard in open court upon said motion, considers and adjudges that said motion be and the same is sustained, and the said order of court relative to the recount of said ballots, entered on order book 23, page 345, is vacated, set aside and held for naught." We are told in brief for appellants that "The court heard oral evidence on this question for two days in addition to the depositions taken and filed," and in brief for appellees it is said that "All the oral testimony heard by the court upon the motion for a recount and the motion to set aside the order for a recount was taken in shorthand by a stenographer but none of it was ever transcribed and filed."

It has been repeatedly held by this court that the certificate of the canvassing board is *prima facie* evidence of the result of an election, but that the ballots themselves constitute the best evidence, but before a counting of the ballots shall be permitted to overcome the *prima facie* result of the certificate of the election officers the one who questions the correctness of the certificate must show by clear and satisfactory testimony that the ballot box has been kept as the statute requires; that the ballots have not been tampered with since the election, and that the ballots offered in evidence are the identical ones cast. Some of the cases so holding are Edwards v. Logan, 114 Ky. 312; McEwen v. Carey, 123 Ky. 536; Baker v. Dinsmore, 138 Ky. 217; Pace v. Reed, idem. 605; Morgan v. Sparkman, 143 Ky. 27; Thomas v. Marshall, 160 Ky. 168; Ottley v. Herriford, 161 Ky. 7; Thompson v. Stone, 164 Ky. 18, and Rich v. Young, 176 Ky. 813. Those cases as well as that of Roby v. Croan, 177 Ky. 9, furthermore hold that the burden is upon the contestant to establish the integrity of the ballot boxes as well as their contents in conformity with the above rule. Whether the contestants in the instant cases sustained that burden we are unable to say since, as we have seen, a large portion, if not all, of the testimony heard upon the motion concerning the counting of the ballots (which was necessarily directed to the proper preservation of the ballot boxes and their ballots) was not in any manner made a part of the record and is not before us. In such case the rule is that it will be conclusively presumed that the omitted evidence from the record was sufficient to authorize the judgment complained of. Roundtree v. Meadors, 183 Ky. 47; Neely v. Strong, 186 Ky. 540, and Bridgewater v. Continental Fire Insurance Co., 187 Ky. 43. Following this universal rule we must conclude that the oral testimony heard by the

court supported its judgment in declining to count the ballots.

But it is insisted that having once determined to count the ballots, and the appointed commissioners having done so and made their report, the court was without authority to set aside those orders at a subsequent term and to reject the report of the commissioners. This argument of counsel is made upon the theory that the first order of the court with reference to counting the ballots was such a final one as to put it beyond the power of the court to set it aside and disregard it at a subsequent term. But counsel is evidently mistaken in this contention. The first order with reference to the counting of the ballots was purely interlocutory, it being essentially a determination by the court as to the admissibility of offered evidence (the ballots themselves) and such rulings are always interlocutory and subject to be reconsidered by the court at any time during the progress of the cause. As a trial proceeds the admissibility of testimony is of necessity hurriedly passed upon and it would be both an impractical and an unreasonable rule indeed that would deprive the court of the right to correct an error of this nature however convincing it might be made to appear. On the contrary it is the constant practice to withdraw from the jury testimony which had been previously admitted, and there can be no difference in this regard between a trial by jury and one by the court trying a suit in equity.

Having failed to establish any of the grounds of contest alleged in the petitions and amendments it is next insisted that the names of the appellees were improperly and illegally printed upon the ballots. The foundation for this contention is that each of them filed separate petitions with the county court clerk for the printing of their names upon the ballot and in each petition the candidates designated "Peoples" as the name of the party emblem of the candidate and the picture of a mule as the device for such party. The petitions of the appellees were exact copies of each other. Section 1460 of the statutes directs the county clerk as to how he shall cause the names of the candidates who filed petitions with him to be printed on the ballots and it authorizes him to print "on one ballot all nominations of any party or group of petitioners, as designated by them in their certificate or petition." When there are no more petitions than the required number of offices to be filled and each of them designates the same party name and asks for the same

party device the statute imposes the duty upon the clerk to group all such candidates in one column under the designated party emblem and device and it is unnecessary for that purpose that there should be a joint petition by all of the candidates. We therefore conclude that the statute permitting the grouping of candidates has been substantially complied with in this case.

Another contention is that the contestees did not comply with what is generally known as ''The Corrupt Practice Act'' by filing with the proper authorities expense accounts either before or after the election; but the trouble with this contention, as well as the one just considered relating to the grouping of the candidates, is that neither of them was relied on as a ground of contest. Subsection 12 of section 1596a, *supra*, under which these cases are prosecuted, says that ''Such petition shall be filed and process issued . . . within ten days after such action (final action of the board of canvassers), and shall state the grounds of the contest relied on, and no other grounds shall afterwards be relied upon.'' Section 1565b-11, which is a part of ''The Corrupt Practice Act,'' provides that the failure to file the expense accounts required by the act shall constitute grounds for contesting the election. And in the case of Sparkman v. Saylor, 180 Ky. 263, it was held that the only way by which the unsuccessful candidate might avail himself of the failure of his opponent to comply with the requirements of the statute as to filing the expense accounts therein provided for was by a contest of the election. Having failed to allege either of the two grounds last considered herein in their petitions or any amendment thereto, appellants are deprived of the right to rely upon either of them although the first one, as we have seen (grouping the candidates), would not have been available if it had been properly alleged as a ground of contest.

Upon a consideration of the entire record we are convinced that the judgments were proper and they are each affirmed.