CHARLES J. HAAS, Petitioner, v. CONTEST COURT, SHERWOOD A. CLOCK, Judge, CARL B. STIGER, Judge, and HAROLD D. EVANS, Judge, Respondents.

No. 42995.

Fᴇʙʀᴜᴀʀʏ 20, 1936.

J. C. France, C. J. Cash, and C. J. Lynch, for petitioner.

Clarence Nichols, and R. S. Milner, for respondents.

ALBERT, J.—■ ■ ■ At the threshold of this case we are met with the contention that the proceedings in this court should be dismissed, under the claim that a writ of certiorari will not lie, for the reason that, under the statute, the decree entered by the contest court is final. We had this question before us in the case of Jones v. Fisher, 156 Iowa 582, 137 N. W. 940, and we there settled the question, under the same fact situation as in this case, that certiorari is the proper remedy.

Under section 12456 of the Code, the scope of questions in this kind of proceedings is limited, so far as the matters involved herein are concerned, to a review of the acts of an inferior tribunal, board, or officer exercising judicial functions who is alleged to have exceeded his proper jurisdiction or otherwise acted illegally, and there is no other plain, speedy, and adequate remedy.

So far as this case is concerned, the only question before the court is whether or not the contest board exceeded its jurisdiction. The basis on which this claim is founded consists, first, in a claim that there was lack of jurisdiction because of certain failure to comply with the statutes in reference to the filing of the statement of contest and a bond; and, second, a claim that there was a lack of jurisdiction because of a want of proper parties.

Under chapter 51 of the Code, referring to contesting election of state officers, we have section 1008, reading as follows:

"The statement as provided in chapter 52 must be filed with such clerk within thirty days from the day when incumbent was declared elected."

Also section 1012, reading as follows:

"In case of contests relative to the office of district judge, such selected members of said court shall meet, qualify, and transact the business of said court of contest at such place or

places as they may designate, and in such case, after organizing, may select a clerk other than the one heretofore specified.''

Chapter 52 deals with contesting elections of county officers, and among other provisions are section 1024, reading as follows:

''The contestant shall file in the office of the county auditor, within twenty days after the day when the incumbent was declared elected, a written statement of his intention to contest the election, setting forth the name of the contestant, and that he or she is qualified to hold such office, the name of the incumbent, the office contested, the time of the election, and the particular causes of contest, which statement shall be verified by the affidavit of the contestant, or some elector of the county, that the causes set forth are true as he verily believes.''

And section 1025, reading as follows:

''The contestant must also file with the county auditor a bond, with security to be approved by said auditor, conditioned to pay all costs in case the election be confirmed, or the statement be dismissed, or the prosecution fail.''

Code, section 986, under the general provisions for contesting elections, reads as follows:

''All the provisions of the chapter in relation to contested elections of county officers shall be applicable, as near as may be, to contested elections for other offices, except as herein otherwise provided, and in all cases process and papers may be issued to and served by the sheriff of any county.''

The general election for the year 1934 was held on the 6th day of November, and the state board of canvassers met and canvassed the returns on the 3d day of December, 1934. At this election the Republican candidates for district judges for the Eighteenth judicial district were Ellison, Moffit, Ring, and Clark (the contestant). The Democratic candidates were Cash, Mekota, Pew, and Haas (the incumbent). According to the determination of the state board of canvassers, Ellison, Moffit, Ring, and Haas were declared by such board to be elected. On the 24th of November, 1934, the contestant, Clark, filed a statement of his contest against Haas, accompanied with a bond. These two papers were filed with the secretary of state. On the 4th day of December, 1934, the contestant filed

with the secretary of state what is denominated in the record as a memorandum of refiling, in the following language:

"Comes now the contestant, Atherton B. Clark, and states that on the 24th day of November, 1934, at the hour of about 10:15 A. M., he filed herein a statement of contest in the above entitled matter in the office of the Secretary of State of the State of Iowa.

"That it now appears that at the time of the filing of said statement of contest as aforesaid the Executive Council of the State of Iowa, sitting as the State Board of Canvassers, had not at that time canvassed the vote cast at the general election held on November 6, 1934.

"That at this time, towit, the 4th day of December, 1934, the State Board of Canvassers has fully completed the canvass of the votes cast for State Officers at the general election of November 6, 1934, and has declared elected Charles J. Haas, against whom this contest is lodged.

"Therefore, the contestant, Atherton B. Clark, hereby refiles his statement of contest filed as aforesaid on November 24, 1934, and each and every allegation thereof with the Secretary of State of the State of Iowa and asks that this memorandum of refiling be made a part of the files and records in this proceeding."

▆▆▆ The first question urged on our attention at this point is that, under section 1008 above set out, no statement as therein required was filed within thirty days from the date when the incumbent was declared elected; therefore the contest court had no jurisdiction to hear and determine the contest; in other words, it is contended that the filing made on the 24th day of November was of no force and effect because it was premature, and that the paper known as a memorandum of refiling did not amount to a filing of the statement as required by sections 1008 and 1024.

No authority is cited by either side directly on this question, and the only case that we have been able to find that bears on the same is Broadbent v. Keith, 15 Cal. App. 382, 114 P. 996. California had a statute providing that, in order to institute a contest, a written statement should be filed setting forth certain facts, which statement "must be filed within thirty days after the declaration of the result of the election by the .

body canvassing the returns thereof." Code Civ. Proc. Cal. section 1115. In that case the canvassing board declared the result of the election on the 16th day of April, 1910. The statement of contest required to be filed was made on the 15th day of April, or one day prior to the official action of the board of canvassers. Later, and within the limits of the statute, the contestant filed what he denominated as an amendment to his complaint, which amendment in itself was such a statement as the law required. The holding of the case was that, although the second statement filed was denominated as an amended complaint, it was sufficient in form and that the first filing might be disregarded.

As applied to the case at bar, in the memorandum filed by Clark on the 4th day of December (which was one day after the official action of the state board of canvassers), he refers to the statement of contest which he had heretofore filed on the 24th day of November, and says that he "refiles his statement * * * and each and every allegation thereof * * * and asks that this memorandum of refiling be made a part of the files and records of this proceeding." We feel that, under the circumstances, the result of this refiling memorandum was, in effect, to make all the allegations of the original statement a part of this memorandum, and this was a sufficient compliance with the requirements of the statute. The real purpose of the filing of this statement is to make of record the objections and complaints that the contestant has, and to make a showing of why the incumbent is not entitled to hold the office to which he has been declared elected.

█▌█ The sufficiency of the statement thus filed is not a jurisdictional question. This is recognized by reason of the provisions of sections 1033 and 1034 of the Code, which provide for amendments to such contest statements.

█▌█ The next question raised is as to the filing of the bond. The bond was originally filed on the 24th of November, and the memorandum does not state that the bond is refiled. However, it develops under the fact situation that the bond bears the filing stamp of the clerk of the contest court on the 20th day of December, 1934. It will be noticed that section 1025 states that:

"The contestant must also file * * * a bond, with security.

\* \* \* conditioned to pay all costs in case the election be confirmed, or the statement be dismissed, or the prosecution fail.''

 Originally this section and the section preceding it (1024, providing for the filing of the statement of contest) were one section of the Code. We are of the opinion that under these two sections of the Code a bond filed at any time within the thirty-day period is sufficient. As we view it, it is not necessary that the bond accompany the petition at the time it is filed; in other words, we do not think it is compulsory, under this section, that the bond and the statement of contest be filed at the same time, so long as both are filed within the thirty-day period.

Reference is made to the case of Marsh v. Huffman, 199 Iowa 788, 792, 202 N. W. 581, 583, an opinion written by the writer hereof. In that case, referring to the statutes of Iowa, we said:

''They require that the contestant, in order to institute proceedings, must file a statement of his contest with the county auditor, accompanied by a bond. When this is done by the contestant, he has completed his duties under the statute.'' ·

In the Marsh case the statement of contest and the bond were filed with the auditor at the same time, and the word ''accompanied'' in the opinion was used as applying to the facts in that case. The question we have here was not raised in that case, and that case is not authority for the rule contended for here by the incumbent. We hold that, if the statement of contest and the bond are both filed within the statutory period of thirty days, that is sufficient compliance with the statute, regardless of whether they are filed on the same day or not. The bond here filed, as above stated, was filed with the clerk of the contest court on the 20th day of December, which was within the thirty-day period, and bears that clerk's indorsement.

In addition to this, the bond bears the following indorsement: ''Bond accepted November 24, 1934. Mrs. Alex Miller, Secretary of State, by James O. Green, Deputy.''

This bond, of course, in the first instance, was prematurely filed; but we do not think that this is disastrous to the appeal. Many cases have held that the premature filing of a bond will

not defeat an appeal. Among others, we note the following: Pierce v. Manning, 1 S. D. 306, 47 N. W. 295; Wores v. Preston, 4 Ariz. 92, 77 P. 617; McClellan v. Pyeatt (C. C. A.) 49 F. 259; Stillings v. Porter et al., 22 Kans. 17.

It appears, therefore, from the record that, while the bond was prematurely filed, it was duly accepted by the secretary of state and was approved by the clerk of the contest court within 30 days after the canvassing board had proclaimed the result.

It is also to be noted that the statute specifically provides (section 1009):

"Upon the filing of such statement, the chief justice of the supreme court, * * * shall select the membership of the court to try such contest."

So therefore, under this section, immediately on the filing of the contest with the secretary of state, the chief justice was authorized to and did appoint this court of contest. The bond in controversy was then in the office of the secretary of state and had been officially accepted. It evidently went with the contest papers into the hands of the contest court and was approved by its clerk. As stated above, the bond bore the acceptance thereof by the secretary of state, and the general rule is that the approval required by the statute need not be evidenced by a certificate or endorsement on the bond or undertaking, and, where the bond or undertaking is received and filed without objection by the official designated to approve it, his approval is presumed. 3 Corpus Juris, p. 1175.

On this question our attention is called to the case of Wilson v. Matson, 110 Neb. 630, 194 N. W. 735. In that case there was no bond filed within the time provided by statute, and the court held rightfully that the statutory limitation applied to the bond as well as to the petition of contest, and that the statutory requirement fixing the time within which the bond must be filed was mandatory. This is the only point decided in the case bearing on the question we have before us.

We think that the filing of this bond as above stated was a sufficient compliance with the statute, and it is our conclusion, therefore, as to both of these questions, that the court had jurisdiction.

The other material question in the case, on which the incumbent bases his claim of want of jurisdiction, is that proper

parties were not brought into this proceedings, and arises from the following situation:

The Republican ticket, as heretofore stated, had four candidates, and the Democratic ticket had four candidates. Of the four Republican candidates, Clark was the low man, and received fewer votes than any of the other three Republican candidates. Haas was the high man among the Democratic nominees, and received more votes than Clark received; hence the state canvassing board, as between these two men, determined that Haas was duly elected. It is contended by the incumbent that under these conditions, in order properly to institute this kind of a proceedings, it is not sufficient, under section 1024 of the Code heretofore set out, to make one candidate the contestee, but that all four of the successful candidates should be made parties, and, this not having been done, the contest board had no jurisdiction to entertain or proceed with the contest. Logically we can see nothing in this contention. We can conceive of no reason why the unsuccessful candidate cannot contest with the low man among the successful candidates. There is no apparent reason why he cannot concede the election of the three candidates who are the three high men on the successful ticket and carry on his contest against the low man on the successful ticket. It is argued, however, that because the statute, in sections 1024 and 1028, providing for notice, uses the word "incumbent" in the singular form, and because there are four incumbents, they ought all to be made parties defendant. We do not believe this to be the rule. It is true that 20 C. J. p. 223, lays down the rule contended for by the relator. As authority for that rule two cases are cited, Conway v. Sexton, 243 Ill. 59, 90 N. E. 203, and Lyons v. Becker, 272 Ill. 333, 111 N. E. 980.

In the Lyons case, the contest was over an election of commissioners, under a commission form of government, and the single question decided was whether or not the men, who had all been elected at the same time, had the right to pass upon the contest of their own offices, and thus be judges of their own elections. This was the only question decided.

In the Conway case five trustees of a drainage district were to be elected. In the contest proceedings the five who were declared elected were named as parties defendant, and the relief asked was against each and all of the five who were declared

elected. When the notice of the contest was served, only three of those who were declared elected were served with notice, and the court held that, as the contest was against each of the five, the notice must be served on each of them, which was a correct holding.

In a later case in the same court (Wells v. Robertson, 277 Ill. 534, 115 N. E. 654, 657), there was a contest over the office of judge of the municipal court of Chicago. There were ten offices to be filled, and there were four tickets—Progressive, Socialist, Democratic, and Republican—and each ticket bore the names of ten candidates. Wells, who was an unsuccessful candidate, in the first instance filed a contest against all of the candidates elected except Robertson. Donahoe, an unsuccessful candidate, filed an answer to that petition. Later Donahoe filed a cross-petition against one Heap, in which Heap was made sole defendant. The original proceedings seem to have passed out of the picture, because the case is disposed of wholly on the cross-petition and the answer of Heap; and the sole question in the case is whether or not, in Donahoe's contesting cross-petition, all the other parties interested should have been made defendants. The court there said:

"If the demurrer be carried back to the cross-petition, said cross-petition was not demurrable because other candidates in said election were not made parties thereto, as argued by appellant. Both the cross-petition and the answer of appellee to the original petition show that it was unnecessary to make any other candidates parties, because they disclose, and in fact it is asserted in both of them, that the true votes were certified and canvassed and tabulated by the canvassing board. There was only one question presented, so far as disclosed by the pleadings, for the court to determine, and that is whether appellant was elected or appellee, who is now holding the office, and the only one holding the office whose right thereto is questioned. It was not necessary to make other candidates parties"—citing Brents v. Smith, 250 Ill. 521, 95 N. E. 484, and Mayfield v. Miles, 266 Ill. 186, 107 N. E. 152, both Illinois cases.

The Mayfield case, 266 Ill. 186, 107 N. E. 152, decided subsequently to the Conway case, 243 Ill. 59, 90 N. E. 203, says, in substance, that a candidate for public office, who according to the official canvass receives the least number of votes among

three candidates and does not make any claim to the office, is not a necessary party to an election contest between the other two candidates.

In the Brents case, 250 Ill. 521, 95 N. E. 484, 487, the canvass showed that Smith (the Republican candidate) had a majority of three over Brents (the Democratic candidate). Each of these candidates had over 3,200 votes. Hart (the Socialist candidate) had 172 votes, and Bickerdike (the Prohibition candidate) had 100 votes. Brents instituted a contest against Smith, but did not make Hart and Bickerdike parties. It was claimed that, under the Conway case, supra, the petition should be dismissed because Hart and Bickerdike were not made parties. The court said:

" * * * it would be most unreasonable to believe that one of them [Hart or Bickerdike] could gain enough on a recount to entitle him to be declared elected. The result of the contest proved that fact. In the Conway v. Sexton case the pleadings did not show, and in the light of the facts in that case could not honestly show, that the candidates who were not made parties might not on the recount have been necessary parties."

Reference is also made in the brief to the case of Craft v. Davidson, 189 Ky. 378, 224 S. W. 1082. In that case the question decided, and the only question decided, was whether the city council or the circuit court of appeals had jurisdiction over a contest between the members of the city council. This in no way involves the question here under consideration, and whatever is said in that opinion, as well as what is said in the Conway case, is purely dictum.

By selecting the low man of those elected with whom to contest, the contestant, by his failure to make the other three high men parties to the contest, concedes that the three high men received enough votes to elect them under any circumstances; and it necessarily follows that, if on a recount he got more votes than any one of the three high men, Haas could not be elected under such circumstances. So the determining question and the only question in which Haas could be interested, is whether or not Clark got more votes than he (Haas) got. There were four offices to fill, and if Clark got more votes than Haas, he (Clark) would be entitled to the election certificate; and neither Clark nor Haas, nor any of the three high men, is interested in

any other question than, as between Clark and Haas, which one got the larger number of legal votes. This being true, we cannot see where either of the three high men who were declared elected can in any way be affected by the determination of this question between Clark and Haas.

Aside from this, we have doubts as to whether or not the failure to make the proper parties defendants is jurisdictional.

Code, section 1032, provides that:

"The proceedings [in this kind of a matter] shall be assimilated to those in an action, so far as practicable, but shall be under the control and direction of the court, which shall have all the powers of the district court necessary to the right hearing and determination of the matter, * * * ."

Section 10981 provides that:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in."

If we assimilate the procedure in this case, as provided by the above statutes, to the ordinary action, then under the last section above quoted, the remedy, if there were not proper parties, would not be to dismiss the action for want of proper parties, but to ask the court to make an order bringing in such parties as it is claimed are necessary; and, where such situation exists, the court still has jurisdiction of the parties before it, and therefore the contention is not well taken that there was a lack of jurisdiction for want of proper parties.

We reach the conclusion that, as said in the Wells case, supra:

"There was only one question presented, so far as disclosed by the pleadings, for the court to determine, and that is whether appellant was elected or appellee, who is now holding the office, and the only one holding the office whose right thereto is questioned. It was not necessary to make other candidates parties."

We conclude, therefore, as a summary of the whole case,

that the contest court did have jurisdiction to hear and determine this contest. This being the only real question involved under this writ, it must follow that the writ should be annulled.

That this opinion may not be misunderstood, it is limited to the identical record we have before us, and is not a rule or guide for a different situation, where, for instance, the contest is made against some candidate or candidates elected other than the one who received the smallest number of votes.—Writ annulled.

DONEGAN, C. J., and ANDERSON, MITCHELL, KINTZINGER, and HAMILTON, JJ., concur.

RICHARDS and PARSONS, JJ., dissent.

RICHARDS, J. (dissenting)—Respectfully dissenting, the writer suggests that statutes, conferring the right to contest an election, grant only a privilege to the defeated candidate, where none existed at the common law, and that the contestant acquires under such statutes only such expressly limited and conditional privileges as the legislature may see fit to extend. Gillespie v. Dion, 18 Mont. 183, 44 P. 954, 33 L. R. A. 703; Daugherty v. Carnine, 261 Ill. 366, 103 N. E. 1003. Further, an election contest has for its subject-matter, namely, a public office, a thing in which the contestant has no inherent or property rights. Shaw v. Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S) 825, 9 Ann. Cas. 1039. So, it is neither an action at law nor a suit in equity. Girhard v. Yost, 344 Ill. 483, 176 N. E. 899. In Pflanz v. Foster, 155 Ky. 15, 159 S. W. 641, 643, it is said:

"There is no inherent power in the courts to pass upon the validity of elections or to try contested election cases; their authority is wholly statutory, and must be either given expressly or by necessary implication."

It is on account of the nature of an election contest as above pointed out that in practically every jurisdiction it is the rule that the statutory provisions for inaugurating an election contest must be strictly construed, and the writer is not in accord with the liberality of construction found in the majority opinion.

As to whether the contestant, Clark, succeeded in instituting a statutory contest of this judicial election there are certain

fundamentals to be considered. Among these are provisions found in code sections 1008 and 1024, which specifically require that the contestant file a written statement, setting forth, among other things, *"the name of incumbent"* and the *"office contested."*

Until this was done, a statutory contest was not instituted by Clark. The election contested was an election of four judges. These four judicial offices to be filled were in no way individually designated or earmarked; the situation being one in which four similar offices were to be filled by a single election. The result is no candidate was seeking election to any particular one of the four offices, and no candidate was running against any other individual candidate for any particular one of the four offices, but rather each candidate was running for an undesignated one of the four offices to which he might attain election by being one of the four candidates receiving the highest number of votes. The only provisions for instituting a contest of an election of state officers are found in sections 1008 and 1024 as above indicated. Assuming that the sections mentioned have application to contest of an election to fill several like offices, as we must assume if there is any contest before us at all, then applying code section 63, sections 1008 and 1024 must be read as if the words "incumbent" and "office" import the plural number in cases of a plural election. Reading these sections in this manner, that is, as if the words "incumbent" and "office" had been the words "incumbent or incumbents" and "office or offices," it becomes obvious that the statement of contest filed by Clark exhibits a failure to comply with the statutes. This failure is obvious, in that three of the incumbents and three of the offices involved in the election were not set forth in, nor made a part of, the subject-matter of the attempted contest, nor were three of the incumbents in any way made parties thereto as the result of the failure to name them as incumbents. The statute provides that notice be given the incumbent named in the statement of contest, and jurisdiction of such incumbent is thereby acquired. In the attempted contest before us, three of the incumbents were not named as party incumbents, and by reason of such failure they at no time became parties to this proceeding. As stated, the election of four judges was the election that was being contested. The contest court could have found nothing in the statutes that authorized

a recount as between Clark and Haas alone, but such was the only issue raised by the statement of contest filed by Clark and undertaken by the contest court. The only issue that could be submitted to a contest court, as intended by these statutes, was the question, *Which four candidates* received the highest number of votes? It seems to the writer beyond debate that Clark failed to comply with the statutes that plainly provided the essential things to be done to institute a contest of an election. The remaining question is whether it can be said that any statutory election contest was instituted, with three-fourths of the subject-matter omitted, and a like proportion of the incumbents omitted, though required by express terms of the statute. The writer is of the opinion the answer must be negative and that the contestant deprived the contest court of jurisdiction of the very subject-matter itself, and this in utter disregard of the statutory requirements that the contestant should have observed. It does not seem to the writer that the contestant can excuse the failure to comply with the statute by saying he conceded to the three omitted incumbents three of the judgeships. Such concession is without substance and effects nothing. This is because contestant had no property in the three judgeships omitted from the proceedings that he could concede to any one. The electorate alone, not the contestant, could confer these three offices. It still remained a fact, after contestant's so-called concession, that, in event of a statutory contest of this election, the status of the three omitted incumbents depended solely upon the results of a lawful recanvass of the ballots properly cast in this judicial election. So, because he failed to observe the fundamental requirements that the incumbents and the offices involved in the election be set out in his statement of contest, the writer is satisfied that the contestant wholly failed to institute a statutory election contest.

As the writer understands the majority opinion, it is their finding that in this case the three omitted incumbents had been safely elected. Upon such finding of fact, the majority seem to conclude that in the case at bar a proper contest was instituted. The writer cannot agree that such finding of fact is in any way material or relevant, or warrants oblivion to the provisions of these statutes. The question that should have been decided is whether or not the statutory provisions necessary to institute a contest of an election were strictly complied with by

contestant. The writer cannot accept the thought that the finding of the contest court justified the procedure adopted. It seems to the writer that the legislature in enacting these statutes must have had in mind the public interests as the important and paramount consideration, rather than the personal fortunes of candidates for office. From these statutes it appears that it was a matter of vast public interest, as contemplated by the legislature, to make provisions by which, through a contest of an election, the *whole election involved* in the contest should be finally and rightly determined. Confidence in our institutions demands that, when there is instituted an election contest, it shall be in a manner insuring a *full*, final, and *complete* determination of the will of the electorate. As already said, it would also seem to the writer that the political fortunes of particular candidates were to the legislature of comparatively small significance. With the relative weight and substance of these matters in mind, we do not believe the Legislature intended that a contestant can omit from his statement of contest three incumbents and thereby safely protect them from any results of a recount that might unseat them, picking out only the candidate or candidates whom it might please the contestant to see removed. The writer does not believe the legislature, having any regard for public interests, intended that a contestant can so frame the proceedings that the only possible judgment that can be rendered by the contest court will be the judgment sought after by the contestant. Such manacling of the contest court is difficult to accept as within the intent of the legislature. The writer does not intend to infer any such animus in the instant case. But he is directing attention to the improbability that the legislature intended to provide the means and procedure for such results, now perhaps rendered possible upon authority of the majority opinion. In view of what the legislature must have had in mind when they enacted these statutes and in view of the strict construction to be adopted for the reasons before mentioned, the writer is of the opinion that a statutory election contest of this judicial election was not instituted by the contestant, and that consequently there was nothing before the contest court. The writer would sustain the writ.

As pointed out, it is *statutory* in Iowa that the incumbents be named in the statement of contest. In Illinois there appears to be no such statutory requirement. Nevertheless in that juris-

diction, even in the absence of statutory requirement, the necessity of making all incumbents parties to the contest has been recognized in Conway v. Sexton, 243 Ill. 59, 90 N. E. 203, 204. In that case five trustees were to be elected. Two opposing tickets were in the field with five candidates on each. Three candidates that were on one ticket and two that were on the other were declared elected. A defeated candidate on the ticket from which two candidates had been declared elected filed a contest. To this contest he made parties the three incumbents declared elected from the opposition ticket, but he did not make parties the two incumbents elected from his own ticket. The three incumbents made parties moved to dismiss the proceeding on the ground that necessary persons, viz., the other two incumbents, were not made parties. The Supreme Court held that the motion was properly sustained, saying:

"The motion to dismiss was therefore properly sustained, because proper and necessary persons, indispensable to a decision of the contest upon its merits, were not made parties to the proceeding. At the time this order was entered, May 13, 1909, it was too late, under the statute, to bring in new parties to the contest."

In the case at bar section 1008 provided that the statement of contest must be filed within thirty days from the date the incumbent was declared elected. After the expiration of that period, it seems too evident for any argument that the missing incumbents could not have been brought into the attempted contest, for, in view of section 1008, no one could reasonably claim that a contest could be instituted against other incumbents after the thirty-day period, under the guise of bringing them as necessary parties. While they were at all times necessary parties, their availability as such had ended with the expiration of the statutory period within which to proceed against them. Making them parties after this period would be an empty gesture. For a holding similar to the Conway case, see Craft v. Davidson, 189 Ky. 378, 224 S. W. 1082.

PARSONS, J. (dissenting)—I agree generally with the dissenting opinion of Judge Richards filed herein, and besides dissent from the majority opinion for the following reasons:

Our statutes on contests of election are found in chapters

47 to 52, inclusive (section 981 et seq.). Chapter 51 (section 1006 et seq.) applies to state officers, and chapter 52 (section 1020 et seq.) applies to contested elections of county officers, chapter 47 (section 981 et seq.) being general provisions applying to all elections, and all these chapters appearing in the Codes of 1924, 1927, 1931, and 1935. Chapter 47 contains section 986, which reads as follows:

''All the provisions of the chapter in relation to contested elections of county officers shall be applicable, as near as may be, to contested elections for other offices, except as herein otherwise provided, and in all cases process and papers may be issued to and served by the sheriff of any county.''

The Code of 1897 contains section 1203, and that is carried into chapter 52 of all the Codes since the Code of 1897. Section 1203, Code 1897 was editorially divided in the new Code as sections 1024–1026, and hence stand now as they stood in the Code of 1897. The provisions as to commencing a contest for county office is that the contest must be filed within the time fixed by statute with the county auditor; the contestant must file a bond conditioned to pay all costs in case the election be confirmed, or the statement be dismissed, or the prosecution fail. When the auditor is a party, the clerk of the district court shall receive such statement and approve such bond. By section 1022 of chapter 52, the county auditor is made the clerk of the contest court. There can be no court until it is assembled; i. e., has been appointed and organized. But section 1203 provided in what is now section 1025 that the contestant must also file with the county auditor a bond, to be approved by said auditor, conditioned to pay all costs in case the election be confirmed, or the statement be dismissed or the prosecution fail.

In a contest of a state office, the statement is filed with the secretary of state. The secretary of state, like the county auditor, is made clerk of the court. Also, like the county auditor, he has an alternate person who may act in -case he is a party to the contest. A bond is required in both contests, and it must be filed and approved in both state and county contests, else we give no force to the provisions of section 986, ''as near as may be''.

There was an abortive attempt to contest this election before the votes had been canvassed; i. e., prior to the time of the

declaration of the election of the judges in the district in question. That contest, being filed prior to the declaration, was as if nothing had been done, and stood for nought. The candidate bringing the contest was a judge of the district court; he had besides himself his own attorneys to prepare the papers and file a contest, and undoubtedly they had in mind absolutely the provisions of the statute as these provisions were contained in section 1203 of the Code of 1897, for at that time they filed, not only the claimed statement of contest, but filed a bond. This bond is set out in the abstract in this case, and recites: "That whereas the above bonden, Atherton B. Clark, has heretofore commenced an action contesting the election of Charles J. Haas as Judge of the District Court in and for the Eighteenth Judicial District of Iowa, and has filed such action and contest in the office of the Secretary of State, * * * shall pay or cause to be paid all costs which shall accrue in said action and contest filed in the said office of the Secretary of State, * * * or in any Court or tribunal to which said action and contest may be carried or transferred, then this obligation to be void." This bond is dated the 23d day of November, 1934, prior to even filing of the abortive · attempt at contest. Subsequently when the incumbent, Haas, was declared elected by the state board of canvassers, he and his attorney realized that it was necessary to commence a contest, as the prior proceeding was not a contest, and could not be filed prior to the declaration of the election. They did commence a contest then, or thought they did, by refiling with the secretary of state the statement filed in the abortive proceeding.

Conceding that it would have the same force and effect as though a new statement of contest were filed, the question arises, Would the refiling of the bond, without approval, containing the recitations it contained, amount to the giving of a bond? It was recited that the proceedings were then pending. There were no such proceedings pending at the date of the bond; hence there was no bond. The bond bears the date of filing with the clerk appointed by the contest court.

What was the object and purpose of the legislature when it enacted section 1203 of the Code of 1897? It was, first, to fix the time within which the contest must be commenced; and, second, to require the giving of a bond to pay all the costs of the proceedings whatever they might be. Section 986 makes

provision for county contests "applicable, as near as may be, to contested elections for other offices." That phrase means something. In this case the secretary of state, when he is not a party, takes the place of the county auditor; costs are incurred the moment that a contest court is ordered. The bond, it seems to the writer, should be given in advance to protect the state; to protect the incumbent against costs; and, in other words, to see that all costs that might be made by the contest were secured. So, without the giving of that bond applicable to the new contest as it stood, and the bond first given was not applicable to this proceeding, then there was no authority for calling a contest court, for the moment that was called costs were begun. The court had to assemble; it had to proceed.

Again, this bond must be approved. By whom? Not by the clerk of the contest court, such as is permitted to be appointed in a contest of district judge, by section 1012, in the contest itself, but by the officer with whom the contest is filed, before the court is formed. Such officer in case of state contest, the secretary of state, or, in the event he is a party, the clerk of the Supreme Court, or, in his absence or inability, the auditor of state, as provided in section 1007 of the present Code.

In the election of county officers, section 1022 provides for a court. It provides that the county auditor shall be the clerk of the court; that, when the auditor is a party, the court shall appoint a suitable person as clerk, whose appointment shall be recorded.

In the county officer contest, chapter 52, section 1024, provides that the contest must be filed with the county auditor; by section 1026 it is provided that, when the county auditor is a party, the clerk of the district court shall receive such statement and approve such bond.

As before pointed out, no new bond was given. The claimed bond, as it appears in the record, is as set out before. So far as these proceedings are concerned, it appears to have been filed only with the contest court on December 20, 1934. This was the clerk appointed by the contest court, not the clerk appointed by the statute, the secretary of state. There was then no authority to call the court, until the bond had been filed; then there is no bond in this case filed with anybody who had power to accept it or power to approve it.

These views find support in Wilson v. Matson, 110 Neb.

630, 194 N. W. 735. The statute of Nebraska in reference to the contesting of elections was as follows:

"The contestant shall file in the proper court, within twenty days after the votes are canvassed, a complaint, setting forth the name of the contestant, and that he is an elector competent to contest such election, the name of the incumbent, the office contested, the time of the election, and the particular causes of contest, which complaint shall be verified by the affidavit of the contestant that the causes set forth are true as he verily believes. The contestant must also file a bond, with security to be approved by the clerk of the court or county judge, as the case may be, conditioned to pay all costs in case the election be confirmed, the complaint dismissed, or. the prosecution fail." Comp. St. Neb. 1922, section 2070.

It will be observed that in the Nebraska statute the contestant shall file a contest in the proper court within twenty days after declaration of the canvass. The statute then describes how it shall be verified, and then says: "The contestant must also file a bond, with security to be approved by the clerk of the court or county judge, as the case may be, conditioned to pay all costs," etc. That in substance is our statute section 1203, as it stood in the Code of 1897, and in the present Code. And under this statute it was held that, not only must the complaint or statement of contest be filed, but that the bond must be filed, and that is mandatory, and it must be filed within the time fixed; i. e., the filing of the complaint. Our statute provides "must also file with the county auditor a bond" (section 1025) conditioned exactly as in the Nebraska statute. In fact, it is the exact language in the two statutes.

If the proper proceedings were not had with the secretary of state, i. e., the filing of a complaint and a bond, then there was no authority to call the court, because these were conditions precedent to the calling of the court, and there was no bond in this case filed with one who had power to accept it or power to approve it.

True, our statute in section 1009 says, upon the filing of such statement, the Chief Justice of the Supreme Court, or the Governor, as the case may be, shall select the membership of the court to try such contest, and shall immediately certify such selection to the court. But there must be a contest initiated,

and if the bond is necessary, and I think it is, there was no authority, if we give any effect to the words which import the county contest law into all contests, then the proper preliminary steps to calling the contest court, did not exist.

So giving effect to the phrase "as near as may be", it is the state officer who approves the bond; the state officer who receives a statement of contest. It is not received by him as clerk of the court, but as such state officer, because of the provisions of the county contest chapter. So, on the whole, I am of the opinion that no contest court was ever legally organized; that no bond was ever in proper time filed and approved provided to pay costs of this proceeding, and hence that the writ should be sustained.